NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 24-5042

————————————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————————

SLASH CREEK WATERWORKS, INC., ET AL.,
*Plaintiffs–Appellants*,

v.

HOWARD LUTNICK, ET AL.,
*Defendants–Appellees.*

————————————————

Appeal from the U.S. District Court for the District of Columbia
No. 1:23-cv-01755 (Hon. Rudolph Contreras)

————————————————

**PROOF BRIEF FOR APPELLEES**

————————————————

ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*

Of Counsel:

ANNE KERSTING
MONICA SMIT-BRUNELLO
*Attorneys*
U.S. Department of Commerce
NOAA Office of General Counsel

THEKLA HANSEN-YOUNG
MARK A. BROWN
KAMELA A. CASCHETTE
EZEKIEL A. PETERSON
*Attorneys*
Environment & Natural Resources Div.
U.S. Department of Justice
999 18th St, North Terrace, Suite 600
Denver, CO 80202
(202) 598-6399
ezekiel.a.peterson@usdoj.gov

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.    Parties and Amici

Plaintiffs

The following parties appear in this case as plaintiffs:

Slash Creek Waterworks, Inc.; Tilman Gray doing business as Avon Seafood, Antonio Giambanco, and J. Ryan Speckman. J & C Charters, LLC participated in this case as a plaintiff but has since been terminated as a party.

Defendants

The following parties appear in this case as defendants:

Howard Lutnick, in his official capacity as Secretary of Commerce, and the National Marine Fisheries Service.

### B.    Ruling Under Review

References to the ruling under review appear in the Brief for Appellants.

### C.    Related Cases

Counsel is not aware of any related cases. As Plaintiffs note, they recently filed a new suit that raises similar arguments but challenges a separate government action.

/s/ *Ezekiel A. Peterson*

EZEKIEL A. PETERSON

Counsel for Appellees

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND
RELATED CASES .................................................................................i

TABLE OF AUTHORITIES .....................................................................v

INTRODUCTION.....................................................................................1

STATEMENT OF JURISDICTION ..........................................................2

STATEMENT OF THE ISSUES ..............................................................2

PERTINENT STATUTES AND REGULATIONS ...................................2

STATEMENT OF THE CASE ..................................................................2

    A.   The Magnuson–Stevens Act...................................................2

    B.   Factual and procedural background.......................................7

        1.   The South Atlantic Snapper–Grouper
           Fishery Management Plan ...........................................7

        2.   The Amendment 43 final rule......................................9

        3.   Subsequent regulatory actions and the
           district-court proceedings ..........................................11

        4.   The Amendment 59 final rule....................................12

SUMMARY OF ARGUMENT ..................................................................14

STANDARD OF REVIEW.......................................................................15

ARGUMENT ............................................................................................16

I.   This case is moot because Amendment 59 superseded
    Amendment 43. .............................................................................16

A.    Amendment 59 supersedes Amendment 43 and calculates an annual catch limit by explicitly considering dead discards. .................................................... 18

B.    Plaintiffs' claim for declaratory relief is also moot.............. 20

C.    The claims are not capable of repetition yet evading review. .................................................................. 21

II.    Plaintiffs' challenge is untimely because it is a backdoor attack on Amendment 43. ............................................ 23

A.    Plaintiffs may not circumvent the 30-day limitations period by challenging the subsequent actions that merely implement a prior regulation. .............. 25

B.    The Ninth and Eleventh Circuit decisions reaching this question are inapposite and wrong. ............... 28

III.    The Fisheries Service complied with the Magnuson–Stevens Act. .................................................................... 32

A.    *A.P. Bell Fish Company* is dispositive and forecloses Plaintiffs' claim....................................... 32

B.    The Fisheries Service complied with the Magnuson–Stevens Act........................................ 37

1.    On their face, Amendment 43 and the temporary rules comply with the Magnuson–Stevens Act by setting an annual catch limit at a level to prevent overfishing................................................. 38

2.    The Magnuson–Stevens Act does not require the Fisheries Service to include dead discards in the annual catch limit. .................... 42

CONCLUSION ............................................................... 44

iii

CERTIFICATE OF COMPLIANCE ........................................................ 45

CERTIFICATE OF SERVICE ............................................................... 46

ADDENDUM ...................................................................................... 1a

# TABLE OF AUTHORITIES

## Cases

*Alpine Securities Corp. v. Financial Industry Regulatory Auth.*,
  121 F.4th 1314 (D.C. Cir. 2024)......................................................34, 36

*Am. Freedom Def. Initiative v. Wash. Metro. Area Transit Auth.*,
  901 F.3d 356 (D.C. Cir. 2018) ..............................................................19

*Am. Horse Prot. Ass'n, Inc. v. Yeutter*,
  917 F.2d 594 (D.C. Cir. 1990) ..............................................................16

*A.P. Bell Fish Co., Inc. v. Raimondo*,
  94 F.4th 60 (D.C. Cir. 2024) ............................................ 32, 33, 35, 36

*Arizonans For Official English v. Arizona*,
  520 U.S. 43 (1997)..................................................................................17

*Bahlul v. United States*,
  77 F.4th 918 (D.C. Cir. 2023)...............................................................34

*Beehthoven.com LLC v. Librarian of Cong.*,
  394 F.3d 939 (D.C. Cir. 2005) ..............................................................22

*Cent. Soya Co. v. Consol. Rail Corp.*,
  614 F.2d 684 (7th Cir. 1980)................................................................22

*Chamber of Commerce of U.S. v. EPA*,
  642 F.3d 192 (D.C. Cir. 2011) ..............................................................17

*City of Houston, Tex. v. Dep't of Housing and Urban Dev.*,
  24 F.3d 1421 (D.C. Cir. 1994) .........................................................20, 21

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)..................................................................................22

*Clarke v. United States*,
  915 F.2d 699 (D.C. Cir. 1990) ..............................................................17

*Coal River Energy, LLC v. Jewell*,
  751 F.3d 659 (D.C. Cir. 2014) ..............................................................20

*Conservation Force, Inc. v. Jewell,*
  733 F.3d 1200 (D.C. Cir. 2013) ........................................... 17

*Corner Post, Inc. v. Board of Governors of Federal Reserve System.,*
  603 U.S. 799 (2024) ............................................................. 30

*Crim v. Comm'r of Internal Revenue,*
  66 F.4th 999 (D.C. Cir. 2023) .............................................. 26

*Encino Motorcars, LLC v. Navarro,*
  579 U.S. 211 (2016) ............................................................. 43

*F/V Robert Michael, Inc. v. Kantor,*
  961 F. Supp. 11 (D. Me. 1997) ............................................. 27

*Friends of Animals v. Bernhardt,*
  961 F.3d 1197 (D.C. Cir. 2020) ........................................... 18

*Gulf Fishermen's Ass'n v. Gutierrez,*
  529 F.3d 1321 (11th Cir. 2008) ............................... 28, 29, 30

*Gulf of Maine Fisherman's Alliance v. Daley,*
  292 F.3d 84 (1st Cir. 2002) ............................................ 19, 20

*Huntsman Petrochemical LLC v. Envtl. Prot. Agency,*
  114 F.4th 727 (D.C. Cir. 2024) ............................................ 15

*Iron Arrow Honor Soc'y v. Heckler,*
  464 U.S. 67 (1983) ............................................................... 17

*Irons v. Diamond,*
  670 F.2d 265 (D.C. Cir. 1981) ......................................... 36, 37

*K Mart Corp. v. Cartier, Inc.,*
  486 U.S. 281 (1988) ............................................................. 42

*Kramer v. Mosbacher,*
  878 F.2d 134 (4th Cir. 1989) ............................................... 27

*Los Angeles Cty. v. Humphries,*
  562 U.S. 29 (2010) ............................................................... 20

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555(1992) ........................................................ 20, 21

*Martha's Vineyard/Dukes Cty. Fisherman's Ass'n v. Locke*,
   811 F. Supp. 2d 302 (D.D.C. 2011) ...................................... 27

*N.C. Fisheries Ass'n v. Evans*,
   172 F. Supp. 2d 792 (E.D. Va. 2001) .................................... 27

*Nat. Res. Def. Council v. U.S. Nuclear Regulatory Comm'n*,
   680 F.2d 810 (D.C. Cir. 1982) ............................................ 20

*Nat'l Ass'n of Clean Water Agencies v. Envtl. Prot. Agency*,
   734 F.3d 1115 (D.C. Cir. 2013) .......................................... 41

*Nat'l Assoc. for Surface Finishing v. EPA*,
   795 F.3d 3 (D.C. Cir. 2015) ............................................... 37

*Nat'l Black Police Ass'n v. Dist. of Columbia*,
   108 F.3d 346 (D.C. Cir. 1997) ............................................ 19

*Norbird Fisheries v. Nat'l Marine Fisheries Serv.*,
   112 F.3d 414 (9th Cir. 1997) .............................................. 28

*Oceana v. Bryson*,
   940 F. Supp. 2d 1029 (N.D. Cal 2013) ................................. 27

*Oceana, Inc. v. Locke*,
   670 F.3d 1238 ................................................................. 25

*Oregon Trollers Ass'n v. Gutierrez*,
   452 F.3d 1104 (9th Cir. 2006) ................................... 28, 29, 30

*Phamachemie B.V. v. Barr Laboratories, Inc.*,
   276 F.3d 627 (D.C. Cir. 2002) ............................................ 22

*Porzecanski v. Azar*,
   943 F.3d 472 (D.C. Cir. 2019) ............................................ 17

*Safari Club Int'l v. Zinke*,
   878 F.3d 316 (D.C. Cir. 2017) ............................................ 15

*Samma v. Dep't of Def.*,
  136 F.4th 1108 (D.C. Cir. 2025)..........................................................18

*Seven Cty. Infrastructure Coalition v. Eagle Cty.*,
  145 S. Ct. 1497 (2025).....................................................................41

*Spencer v. Kemna*,
  523 U.S. 1 (1998)............................................................................22

*Trump v. Mazars USA, LLP*,
  39 F.4th 774 (D.C. Cir. 2022)...........................................................18

*Turtle Island Restoration Network v. U.S. Dep't of Commerce*,
  438 F.3d 937 (9th Cir. 2006)...................................................7, 26, 31

## Statutes

5 U.S.C. § 705 ................................................................................31

16 U.S.C. § 1801 ..........................................................................2, 3

16 U.S.C. § 1851(a)(2) ...............................................................40, 43

16 U.S.C. § 1851(b) .........................................................................43

16 U.S.C. § 1853(a)(15)........................................................32, 33, 38

16 U.S.C. § 1855(f).............................................6, 15, 24, 25, 28, 30, 31

28 U.S.C. § 1291 ...............................................................................2

28 U.S.C. § 1331 ...............................................................................2

## Rules

Fed. R. App. P. 40(b)(2) ....................................................................37

Fed. R. App. P. 40(g)........................................................................37

## Regulations

50 C.F.R. 600.310 ....................................................................5, 6, 43

50 C.F.R. 600.315(e)(2) ................................................................ 40

## Other Authorities

78 Fed. Reg. 44,461 .............................................................. 7, 8

83 Fed. Reg. 35,428 .............................................................. 9, 24

90 Fed. Reg. 24,527 ......................................................... 13, 18, 22

## INTRODUCTION

The National Marine Fisheries Service sets annual catch limits for fisheries under the Magnuson–Stevens Fishery Conservation and Management Act. Plaintiffs are anglers who fish for red snapper. They challenge the Service's decision to set annual catch limits for the South Atlantic red snapper fishery in 2018, 2023 and 2024 without including dead discards—fish that are caught but die.

Plaintiffs' claims fail for three reasons. First, Plaintiffs' claims are now moot because the challenged 2018, 2023, and 2024 regulations are no longer in effect. And no exception to mootness applies because the new 2025 annual catch limit for red snapper includes dead discards. Second, Plaintiffs' claims are time-barred because they challenge the substance of a 2018 regulation, and they did not bring suit within the Magnuson–Stevens Act's 30-day statute of limitations. Finally, Plaintiffs' claims fail on the merits. This Court addressed the same legal issue in a 2024 decision addressing an annual catch limit for a different fishery and held that the Fisheries Service did not violate the statute by excluding dead discards. That decision is binding. And even if that binding precedent didn't exist, Plaintiffs' interpretation of the statute is wrong. The district court correctly granted summary judgment to the government, and this Court should affirm.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331. The district court granted summary judgment for the Fisheries Service on all claims on January 31, 2025. This Court has appellate jurisdiction under 28 U.S.C. § 1291. But as explained below, this Court lacks jurisdiction because the case is now moot.

## STATEMENT OF THE ISSUES

1.      Whether this case is moot where the challenged regulations are no longer in effect.

2.      Whether Plaintiffs' suit must be dismissed for failure to comply with the 30-day statute of limitations in the Magnuson–Stevens Act, which started to run in 2018.

3.      Whether the Fisheries Service complied with the Magnuson–Stevens Act when it excluded dead discards from the red snapper annual catch limit in 2018, 2023, and 2024.

## PERTINENT STATUTES AND REGULATIONS

All pertinent statutes and regulations are set forth in the Addendum following this brief.

## STATEMENT OF THE CASE

### A.    The Magnuson–Stevens Act

The Magnuson–Stevens Act, 16 U.S.C. §§ 1801 et seq., establishes a national program for conservation and management of fishery

resources with federal jurisdiction over such resources within the exclusive economic zone. The Act is designed to promote domestic commercial and recreational fishing under sound conservation and management principles. *Id.* § 1801(b)(1), (3). The Act authorizes the Secretary of Commerce to implement a comprehensive fishery management program to prevent overfishing and to rebuild stocks; the Secretary has delegated the authority to administer the Act to the National Marine Fisheries Service. *See id.* §§ 1853, 1854, 1855.

To assist the Fisheries Service in its fishery management program, the Act establishes eight regional Fishery Management Councils, which have responsibilities regarding fisheries in specific geographic areas. *Id.* § 1852. Each Council includes federal, state, and territorial fishery management officials, as well as individuals "knowledgeable" about fishery resources in the relevant area, who are nominated by state governors and appointed by the Secretary. *Id.* § 1852(b)(1), (b)(2)(A).

The Act requires the Councils to submit proposed fishery management plans containing conservation and management measures, *id.* § 1852(h)(1), any necessary amendments to those plans, *id.*, and any proposed regulations that the Councils deem necessary to implement a plan, *id.* § 1853(c). When a Council sends a proposed plan or plan amendment to the Fisheries Service, the agency publishes a notice of availability in the Federal Register and solicits public

comment. *Id.* § 1854(a)(1)(B). After the comment period closes, the Fisheries Service must approve, disapprove, or partially approve the plan or plan amendment based on its consistency with law. *Id.* § 1854(a)(3). To implement a plan or plan amendment, the Fisheries Service publishes proposed rules, solicits public comment, and promulgates final rules. *Id.* § 1854(b).

The Magnuson–Stevens Act sets forth required contents for fishery management plans, including that plans must contain measures necessary and appropriate "for the conservation and management of the fishery, to prevent overfishing and rebuild overfished stocks, and to protect, restore, and promote the long-term health and stability of the fishery." *Id.* § 1853(a)(1)(A). Overfishing is "a rate or level of fishing mortality that jeopardizes the capacity of a fishery to produce the maximum sustainable yield on a continuing basis." *Id.* § 1802(34). To address overfishing, plans must "establish a mechanism for specifying annual catch limits . . . at a level such that overfishing does not occur in the fishery, including measures to ensure accountability." *Id.* § 1853(a)(15).

Fishery management plans must also "be consistent" with the Act's ten "national standards for fishery conservation and management." *Id.* § 1851(a). Relevant here is National Standard 1, which requires that conservation and management measures "shall

4

prevent overfishing while achieving, on a continuing basis, the optimum yield from each fishery." *Id.* § 1851(a)(1).

The Fisheries Service has issued national standard "guidelines" that set forth the agency's interpretation of the national standards and inform how the agency implements those standards. *Id.* § 1851(b). These guidelines are promulgated through rulemaking processes, but the Act states that they "shall not have the force and effect of law." *Id.* § 1851(b). The National Standard 1 guidelines explain that overfishing occurs when a "stock or stock complex is subjected to a level of fishing mortality or total catch that jeopardizes the capacity . . . to produce [maximum sustainable yield] on a continuing basis." 50 C.F.R. § 600.310(e)(2)(i)(B). The guidelines define the "overfishing limit" as the annual amount of catch above which overfishing is occurring, *id.* § 600.310(e)(2)(i)(C)–(D), and provide guidance on preventing overfishing through the use of "reference points," *id.* § 600.310(b)(2)(iv), (e), (f). Two reference points are: the "acceptable biological catch," which is the level of annual catch that, accounting for scientific uncertainty and risk tolerance, prevents overfishing, *id.* § 600.310(f)(1)(ii); and the "annual catch limit," which is a limit on total annual catch of a stock or stock complex that, if exceeded, can trigger accountability measures, *id.* § 600.310(f)(1)(iii). These reference points serve as tiers: the annual catch limit cannot exceed the acceptable biological catch, and the acceptable biological catch cannot exceed the overfishing limit. *Id.*

§ 600.310(f)(3), (f)(4)(i). The guidelines also generally define "catch" as "the total quantity of fish . . . taken in commercial, recreational, subsistence, tribal and other fisheries . . . includ[ing] fish that are retained for any purpose, as well as mortality of fish that are discarded." *Id.* § 600.310(f)(1)(i).

The Magnuson–Stevens Act also includes a unique judicial-review provision. The Act generally provides that regulations that implement a fishery management plan are subject to judicial review under the Administrative Procedure Act. 16 U.S.C. § 1855(f)(1). But the Act includes several provisions that expressly limit the scope of judicial review of agency action. For instance, the Act states that § 705 of the Administrative Procedure Act, which authorizes courts to grant injunctive relief against agency action, is "not applicable." 16 U.S.C. § 1855(f)(1)(A) (citing 5 U.S.C. § 705). And the Act requires parties seeking judicial review of agency actions to file petitions for such review "within 30 days after the date on which the [challenged] regulations are promulgated or the [challenged] action is published in the Federal Register." *Id.* § 1855(f)(1). The 30-day limitations period and the ban on preliminary injunctive relief work in tandem with a provision for expedited judicial review. *Id.* § 1855(f)(3)–(4). Together, these provisions "demonstrate Congress's intent to ensure that regulations promulgated under the Magnuson Act are effectuated without interruption and that

challenges are resolved swiftly." *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 438 F.3d 937, 948 (9th Cir. 2006).

## B.     Factual and procedural background

### 1.     The South Atlantic Snapper–Grouper Fishery Management Plan

In 1983, the Fisheries Service first enacted a fishery management plan for snapper and grouper in the South Atlantic, including red snapper. AR006866. Red snapper are bottom-dwelling fish that can grow up to 40 inches and 50 pounds. AR006880–81. The fish are chronically overfished in the South Atlantic, which the Fisheries Service has attempted to remedy through many regulatory actions. For instance, a 2008 stock assessment found that red snapper were both overfished (i.e., biomass of the stock was too low) and subject to overfishing since the 1960s (i.e., the rate of fishing of the stock was too high). AR006883. In response, the Fisheries Service adopted an amendment to the fishery management plan designed to rebuild the red snapper population by prohibiting red snapper harvest. AR006867.

A few years later, the Fisheries Service determined that stock levels had recovered to the point where at least some red snapper harvest could take place. *Fisheries of the Caribbean, Gulf of Mexico, and South Atlantic; Snapper-Grouper Fishery off the Southern Atlantic States; Amendment 28*, 78 Fed. Reg. 44,461 (July 24, 2013). Under that regulatory scheme, red snapper harvest could occur if the number of

fish removed in the prior year was less than the year's acceptable biological catch. *See id.* at 44,462. Using this process, red snapper harvest was allowed in 2012, 2013, and 2014 but was prohibited in 2015 and 2016. AR006852.

A large chunk of red snapper mortality occurs through "dead discards," where fish are caught (either intentionally or unintentionally) but die from hooking injuries, barotrauma (tissue damage from pressure changes), or predation. *See* AR010168. Dead discards occur when anglers target red snapper, but also occur when anglers target other bottom-dwelling species that exist alongside red snapper. AR010022. Total estimates of dead discards are difficult to calculate, but from 2012 to 2014, dead discards were estimated to account for a large majority of red snapper mortality. AR010022.

In 2016, a new stock assessment showed that red snapper was still overfished and subject to overfishing, but showed an increase in red snapper biomass to levels not seen since the 1970s. *See* AR010023. Thus, the Fisheries Service determined that allowing limited red snapper harvest was not likely to result in overfishing or to prevent continued stock rebuilding, and the agency allowed limited recreational and commercial harvest through a temporary rule. AR010258. The stock assessment acknowledged that data relating to recreational dead discards "were one of the most important and most uncertain sources of information" about red snapper populations. AR002432. This is largely

because dead-discard estimates were derived from anglers' recollection and were often extrapolated based on small sample sizes. AR00956.

## 2.    The Amendment 43 final rule

In 2018, the Fisheries Service adopted Amendment 43 to the red snapper fishery management plan. Amendment 43 did away with the prior year-to-year management approach and instead adopted an ongoing annual catch limit of 42,510 fish divided between the commercial and recreational sectors. *Fisheries of the Caribbean, Gulf of Mexico, and South Atlantic; Snapper-Grouper Fishery of the South Atlantic Region; Amendment 43*, 83 Fed. Reg. 35,428, 35,429 (July 26, 2018).

In its analysis of Amendment 43, the Fisheries Service devoted significant time to discussing the problem of dead discards. When the regional fishery council was developing the proposed amendment, the Fisheries Service's Southeast Fisheries Science Center provided the council with projections of dead discards but noted that "the proposed projections are not appropriate for management use" because the estimate relied on individuals' memory and thus the uncertainty in the estimate was large. AR007041. The agency's Science Center further explained that setting an acceptable biological catch primarily based on dead discards would likely be ineffective due to this high level of uncertainty. AR007037; AR009957. Taking into account the stock assessment and this advice from the Science Center, the council

recommended, and the Fisheries Service ultimately determined that, given the uncertainty associated with red snapper dead discard estimates, it was not appropriate to rely on those estimates for red snapper management, such as in setting the annual catch limits. AR007174.

But that is not to say that the Fisheries Service completely ignored dead discards in setting the management direction for red snapper. The Fisheries Service acknowledged the high rate of dead discards while also explaining that red snapper abundance had increased (reaching its highest point since at least 1990) and that the increase had taken place despite the estimated large number of dead discards. AR009958. The Fisheries Service explicitly referenced prior estimates of dead discards but explained that those estimates have "too high a degree of uncertainty to allow their use for management action." AR009959. The agency also noted that those estimates are "at odds with the reliable evidence of significant rebuilding progress, including substantial gains in stock abundance and diversity of age classes, even during years when the high discards supposedly occurred in addition to directed harvest." AR009959. The Fisheries Service ultimately determined that setting the annual catch limit at 42,510—20% below the acceptable biological catch—"is not expected to result in overfishing or prevent continued stock rebuilding." AR009959–60.

### 3.    Subsequent regulatory actions and the district-court proceedings

In 2021 the Fisheries Service published a new red snapper stock assessment, which showed that, although the stock had not yet rebuilt and was still experiencing overfishing, the stock had nonetheless continued to increase rapidly since 2010. SAR012002. In May 2023, the Fisheries Service published a temporary rule establishing the 2023 red snapper season and imposing the same annual catch limit as in Amendment 43. *See* AR000001. Plaintiffs filed this lawsuit in June 2023, challenging Amendment 43 and the 2023 temporary rule on the basis that the Fisheries Service unlawfully excluded dead discards from the red snapper annual catch limit. ECF 1 at ¶¶ 75–87.

While this suit proceeded in district court, the Fisheries Service continued adapting its approach to red snapper management. In June 2023, the agency published a new temporary rule governing the 2024 red snapper season. SAR012494. In the 2024 temporary rule, the agency adopted interim measures designed to reduce overfishing by reducing the annual catch limit from 42,510 fish to 31,000 fish, which aligned with the then-current recommendation made by the regional fisheries council's scientific and statistical committee. SAR012495.

Plaintiffs amended their complaint to raise the same claims against the 2024 temporary rule. ECF 26-3. The parties cross-moved for summary judgment. On January 31, 2025, the district court granted

summary judgement to the Fisheries Service. ECF 44 at 40. On the threshold issues, the district court assumed without deciding that Plaintiffs' challenges were timely, found that Plaintiffs had standing to raise their claims, and held Plaintiffs' challenge to the 2023 temporary rule was not moot because it was capable of repetition yet evaded review. *Id.* at 15–25. But the court found that Plaintiffs' challenges to the 2018, 2023, and 2024 catch limits failed on the merits. Relevant here, the court held that the Fisheries Service did not violate the Magnuson–Stevens Act by excluding dead discards from the red snapper annual catch limit because the statute does not require that an annual catch limit include dead discards, it only requires that the limit be set at a level to prevent overfishing. *Id.* at 27–30. Plaintiffs timely appealed on February 20, 2025.

### 4. The Amendment 59 final rule

In 2024, while this lawsuit was proceeding in district court, two of the Plaintiffs filed a separate complaint against the Fisheries Service, arguing that the agency had failed to issue regulations to prevent overfishing and rebuild stocks of red snapper. *See* Complaint, Dkt. 1, *Gray v. Raimondo*, No. 1:24-cv-1431 (May 15, 2024). In August 2024, the parties in that case entered into a stipulated settlement agreement, in which the Fisheries Service committed to issuing a final rule designed to stop overfishing on the South Atlantic red snapper stock by

June 2025. Stipulation of Settlement, Dkt. 9, *Gray v. Raimondo*, No.
1:24-cv-1431 (August 20, 2024).

On June 11, 2025 (after Plaintiffs had filed a notice of appeal in
this case), the Fisheries Service issued that final rule, known as
Amendment 59 to the fishery management plan. *Snapper-Grouper
Fishery of the South Atlantic; Amendment 59*, 90 Fed. Reg. 24,527 (June
11, 2025). Amendment 59 gives Plaintiffs what they seek to remedy
through litigation: it calculates a new annual catch limit that explicitly
accounts for dead discards. Instead of setting an annual catch limit that
only includes landings, the rule "increases the total [annual catch limit]
to 509,000 fish, separated into 34,000 fish as landings and 475,000 fish
as dead discards." *Id.* at 24,529. The amendment explains that new
method of calculating dead discards "is considered more reliable . . . and
more robust" when compared to earlier methods. *Id.* at 24,532. The
amendment also revises the overfishing limit and the acceptable
biological catch to 551,000 fish and 509,000 fish, respectively, to
explicitly account for dead discards and provide a buffer to account for
scientific uncertainty. *Id.* In adopting Amendment 59, the Fisheries
Service explained that it relied on the most recent (2024) stock
assessment and that the rule was designed to end and prevent
overfishing of the red snapper fishery. *Id.* at 24,527. Some of the
Plaintiffs have challenged that rule. *Slash Creek Waterworks, Inc. v.
Lutnick*, No. 25-cv-2140 (D.D.C. Complaint filed July 3, 2025).

## SUMMARY OF ARGUMENT

1.      This case is moot. Amendment 59 superseded Amendment
43 and the prior temporary rules in all respects, and the Fisheries
Service no longer relies on those prior rules. Moreover, Amendment 59
sets the annual catch limit explicitly by explicitly accounting for dead
discards. No exceptions to mootness apply here, and this Court should
dismiss the case.

2.      Even if this case was not moot, Plaintiffs' claims would
nonetheless fail because Plaintiffs did not file suit within the
Magnuson–Stevens Act's 30-day statute of limitations. Plaintiffs filed
suit years after the Fisheries Service issued Amendment 43, and the
only component of the more-recent rules that they challenge are those
rules' reliance on the methodology in Amendment 43. Under the
expedited judicial-review provisions of the Magnuson–Stevens Act,
Plaintiffs were required to bring their challenge within 30 days of
publication of Amendment 43. Their claim is now time-barred.

3.      Setting aside the threshold deficiencies with Plaintiffs'
claims, their claims still fail on the merits. Binding Circuit precedent
bars Plaintiffs' argument that the Fisheries Service must include dead
discards in its calculation of the annual catch limit. In this Court's 2024
decision in *A.P. Bell Fish Company v. Raimondo*, the Court held that
the Fisheries Service complied with the Magnuson–Stevens Act when it
excluded dead discards from an annual catch limit because the agency

factored dead discards into the overfishing limit and because § 1853(a)(15) only requires that the Fisheries Service set an annual catch limit such that overfishing does not occur. That precedent is directly on point, therefore precluding Plaintiffs' argument.

Moreover, nothing in the Magnuson–Stevens Act bars the Fisheries Service from excluding dead discards from the annual catch limit, Plaintiffs point to no statutory text that says otherwise, instead arguing that using such methodology facially violates the statute because it can never functionally "limit" red snapper "catch." That argument has no support in the text of the statute. It also contradicts the agency's reasoned explanation for why it declined to include dead-discard estimates in the 2018, 2023, and 2024 catch limits. This Court should affirm.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo. *Safari Club Int'l v. Zinke*, 878 F.3d 316, 325 (D.C. Cir. 2017). The Magnuson–Stevens Act provides for judicial review of agency decisions under the Administrative Procedure Act's standard. 16 U.S.C. § 1855(f). Under that standard, the Court may hold unlawful and set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Huntsman Petrochemical LLC v. Envtl. Prot. Agency*, 114 F.4th 727, 735 (D.C. Cir. 2024) (quoting 5 U.S.C. § 706(2)(A)). This standard is highly deferential, presuming the

15

agency action to be valid and affirming the agency action if a reasonable basis exists for its decision. *Am. Horse Prot. Ass'n, Inc. v. Yeutter*, 917 F.2d 594, 596 (D.C. Cir. 1990).

## ARGUMENT

This case is moot. After the Fisheries Service promulgated Amendment 59, there is no longer a live controversy between the parties as to Plaintiffs' claims and no exception to mootness applies. Even if this case were not moot, Plaintiffs' claims suffer from a second threshold deficiency: they are untimely under the judicial-review provisions of the Magnuson–Stevens Act. And, in any event, Plaintiffs' claims are wrong on the merits, both under binding Circuit precedent and general principles of statutory construction. This Court should dismiss as moot or affirm the judgment of the district court.

## I.    This case is moot because Amendment 59 superseded Amendment 43.

This case is moot because, after the Fisheries Service issued Amendment 59, Plaintiffs can no longer obtain the relief they seek. Plaintiffs' supplemental complaint asks primarily for three types of relief. First, they ask the court to issue a declaration that the Fisheries Service violated the Magnuson–Stevens Act and the Administrative Procedure Act by approving Amendment 43 and implementing the 2023 and 2024 temporary rules. ECF 26-3 at 42. Second, they ask the court to vacate the 2024 temporary rule and the final rule implementing

16

Amendment 43. *Id.* And third, they ask the court to order the Fisheries Service to "establish a legally adequate annual catch limit for South Atlantic red snapper that prevents overfishing, actually functions as a limit on both discarded and landed catch, and reflects the previously adopted allocation ratio between the commercial and recreational sectors." *Id.* All three of those requests seek relief against Amendment 43, which Plaintiffs concede is no longer in force. Thus, this case is moot.

For a case to be justiciable in federal court, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans For Official English v. Arizona*, 520 U.S. 43, 67 (1997). Federal courts lack jurisdiction to decide moot cases because "their constitutional authority extends only to actual cases or controversies." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)). A case is moot "if intervening events make it impossible to grant any effectual relief." *Porzecanski v. Azar*, 943 F.3d 472, 479 (D.C. Cir. 2019) (internal quotations omitted). Effective relief is impossible where a court's decision "will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Chamber of Commerce of U.S. v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011) (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990)). Although the party asserting a case is moot has

the initial burden of establishing mootness, the Court also has an
independent obligation to ensure that an appeal before it is not moot.
*Trump v. Mazars USA, LLP*, 39 F.4th 774, 785 (D.C. Cir. 2022).

### A. Amendment 59 supersedes Amendment 43 and calculates an annual catch limit by explicitly considering dead discards.

When the Fisheries Service promulgated Amendment 59, it ceased
relying on or applying Amendment 43 in any capacity, depriving it of
any future effect. Amendment 59 sets a new annual catch limit based
on a new methodology. 90 Fed. Reg. 24,529. Amendment 59 largely does
what Plaintiffs want the Fisheries Service to do because it sets an
annual catch limit that includes dead discards. *Id.*; *cf.* ECF 26-3 at 42
(asking the court to order the Fisheries Service to establish an annual
catch limit that "functions as a limit on both discarded and landed
catch"). As this Court has repeatedly recognized, "the government's
abandonment of a challenged regulation is just the sort of development
that can moot an issue." *Samma v. Dep't of Def.*, 136 F.4th 1108, 1113
(D.C. Cir. 2025) (quoting *Friends of Animals v. Bernhardt*, 961 F.3d
1197 (D.C. Cir. 2020)). The case is moot because Amendment 59 has
superseded Amendment 43.

In their complaint, Plaintiffs nonetheless ask the Court to
invalidate Amendment 43. But this Court cannot grant such relief
where that amendment is no longer in effect and has been replaced by

Amendment 59. Doing so would amount to an advisory opinion stating that a regulation setting an annual catch limit using Amendment 43's methodology would be unlawful were the Fisheries Service to use it again. Federal courts have "no power to render advisory opinions or decide questions that cannot affect the rights of litigants in the case before them." *Am. Freedom Def. Initiative v. Wash. Metro. Area Transit Auth.*, 901 F.3d 356, 362 (D.C. Cir. 2018) (quoting *Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997)).

This fact pattern is analogous to the one that the First Circuit held was moot in *Gulf of Maine Fisherman's Alliance v. Daley*, 292 F.3d 84, 88 (1st Cir. 2002). In *Gulf of Maine*, the plaintiffs filed a suit challenging a Fisheries Service regulation but, while the case was pending, the Fisheries Service adopted a new regulation that expanded upon the prior regulation. *Id.* at 87. The plaintiffs filed a separate lawsuit challenging the new regulation but also sought to continue their lawsuit challenging the original regulation. *Id.* at 87. The court found that the challenge to the original regulation was moot. Because the old regulation was no longer in effect, the court had "no means of redressing either procedural failures or substantive deficiencies associated with a regulation that is now defunct." *Id.* at 88.

The Court should reach the same conclusion here. Plaintiffs' challenge to Amendment 43, the 2023 temporary rule, and the 2024 temporary rule are moot because those regulations are no longer in

effect and thus the Court has no means of redressing any substantive deficiencies therein. *See id.*; *see also Nat. Res. Def. Council v. U.S. Nuclear Regulatory Comm'n*, 680 F.2d 810, 813–15 (D.C. Cir. 1982) (holding that a procedural challenge to a regulation was rendered moot by a repromulgation of the regulation in accordance with procedural requirements).

### B. Plaintiffs' claim for declaratory relief is also moot.

Plaintiffs' claim for declaratory relief is also moot. Declaratory relief is prospective relief. *See, e.g.*, *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 31 (2010); *Coal River Energy, LLC v. Jewell*, 751 F.3d 659, 664 (D.C. Cir. 2014). A plaintiff challenging both a specific agency action and the policy that underlies the action may maintain a request for declaratory relief forbidding an agency from imposing the disputed policy in the future, but only if the plaintiff can show that it has standing to bring such a forward-looking challenge and if the request for declaratory relief is ripe. *City of Houston, Tex. v. Dep't of Housing and Urban Dev.*, 24 F.3d 1421, 1429, 1429 n.6 (D.C. Cir. 1994). The plaintiff must show that the harm resulting from those acts is "actual or imminent, not conjectural or hypothetical." *Id.* at 1429 n.6 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560(1992)). Past exposure to illegal conduct does not establish a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present

20

adverse effects. *Lujan*, 504 U.S. at 564. If a plaintiff attacks an isolated agency action rather than some ongoing underlying policy, the resolution of the specific claim moots any claim for a declaratory judgment that the specific action was unlawful. *City of Houston*, 24 F.3d at 1429.

Here, as explained above, Plaintiffs challenge Amendment 43, the 2023 temporary rule, and the 2024 temporary rule—all isolated agency actions rather than underlying policies. And to the extent that Plaintiffs may contend that they challenge the Fisheries Service's policy of not including dead discards in its annual catch limit, this Court would lack jurisdiction over such a claim because Plaintiffs lack standing to bring such a forward-looking challenge where the new regulations do not apply that policy. *City of Houston*, 24 F.3d at 1429. Nor would such a challenge be ripe in the absence of a regulation applying such a policy.

## C.    The claims are not capable of repetition yet evading review.

If Plaintiffs assert that their claims are not moot because the claims are capable of repetition, yet evade review, that argument is also wrong. The "capable-of-repetition" exception to mootness is a doctrine that "applies only in exceptional situations" where two conditions are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration and (2) there is a reasonable expectation that the same complaining party will

be subject to the same action again. *Spencer v. Kemna¸* 523 U.S. 1, 17 (1998) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)).

Prior to the promulgation of Amendment 59, the district court found that Plaintiffs' challenges to the 2023 and 2024 temporary rules were capable of repetition yet evaded review because the five-month rules were too short to be fully litigated and because there was a reasonable chance that the issue would recur while Amendment 43 remained live. ECF 44 at 20–21. But, now that Amendment 59 has fully superseded Amendment 43, there is no reasonable chance that Plaintiffs will be subject to another temporary rule under Amendment 43 that excludes dead discards from the annual catch limit. This is because Amendment 59 specifically sets an annual catch limit that includes dead discards. 90 Fed. Reg. 24,529. Thus, there is no reasonable expectation that the issue of including dead discards in annual catch limits for the red snapper fishery "will be the basis of a continuing controversy between these two parties," and the second prong of the capable-of-repetition test is not satisfied. *Phamachemie B.V. v. Barr Laboratories, Inc.*, 276 F.3d 627, 633 (D.C. Cir. 2002) (quoting *Cent. Soya Co. v. Consol. Rail Corp.*, 614 F.2d 684, 689 (7th Cir. 1980)); *see also Beehthoven.com LLC v. Librarian of Cong.*, 394 F.3d 939, 951 (D.C. Cir. 2005) ("A 'theoretical possibility' is not sufficient to qualify as 'capable of repetition' . . . there must instead be a 'reasonable

expectation' or 'demonstrated probability' that the action will recur." (cleaned up)).

Moreover, even if the Fisheries Service did adopt a new regulation that excluded dead discards from the annual catch limit, Plaintiffs could challenge that regulation. They have already filed suit to challenge Amendment 59, and nothing would stop them from challenging any future regulation. *See Slash Creek Waterworks, Inc. v. Lutnick*, No. 25-cv-2140 (D.D.C. Complaint filed July 3, 2025). So the controversy does not meet the mootness exception because it does not "evade review"— there would be an opportunity for judicial review in the future. This Court should dismiss Plaintiffs' appeal as moot.[1]

## II.    Plaintiffs' challenge is untimely because it is a backdoor attack on Amendment 43.

This Court may dispose of this case on mootness alone without reaching the statute of limitations or merits issues. But even if this case were not moot, this Court may nonetheless affirm the judgment of the district court because Plaintiffs' claims are untimely under the Magnuson–Stevens Act. The judicial-review provisions of the Act include stricter procedural requirements than the Administrative Procedure Act, explaining that Fisheries Service regulations and

---

[1] To the extent that Plaintiffs argue that Amendment 43 was too short in duration to be fully litigated prior to its cessation, it bears noting that Amendment 43 was in effect for years before Plaintiffs filed this suit. But Plaintiffs chose to wait to bring their claim.

actions implementing fisheries-management plans are only subject to judicial review "if a petition for such review is filed within 30 days after the date on which the regulations are promulgated or the action is published in the Federal Register." 16 U.S.C. § 1855(f)(1).

On its face, Plaintiffs' complaint challenges the merits of the 2018 Amendment 43 final rule, the 2023 temporary rule, and the 2024 temporary rule. ECF 26-3 at 3–4 ("Plaintiffs challenge a temporary rule . . . as well as the underlying regulations upon which the temporary rule is based, which come from Amendment 43. . . . "); *id.* at 26 ("This case . . . challeng[es] the last of these implementation actions . . . as well as the underlying regulations from Amendment 43."); *id.* at 42 (asking the court to declare that Fisheries Service violated the Magnuson–Stevens Act and the Administrative Procedure Act when it "approved Amendment 43 and implemented it through the 2023 Temporary Rule, and when [it] approved and promulgated the 2024 Temporary Rule.").

Any of Plaintiffs claims challenging Amendment 43 itself are clearly time-barred under the Magnuson–Stevens Act's judicial-review provision. The Fisheries Service published Amendment 43 in the Federal Register on July 26, 2018, but Plaintiffs did not file suit at that time. 83 Fed. Reg. 35,428. Instead, Plaintiffs waited for almost five years and filed their complaint on June 16, 2023. Plaintiffs' challenges to the 2023 and 2024 rules must also be dismissed as untimely because

24

those claims only seek to invalidate the methodology that the Fisheries Service applied in Amendment 43.

### A.    Plaintiffs may not circumvent the 30-day limitations period by challenging the subsequent actions that merely implement a prior regulation.

Plaintiffs filed suit within 30 days of the 2023 temporary rule and supplemented their complaint within 30 days of the 2024 temporary rule. Plaintiffs accordingly believe their suit is timely because the Magnuson–Stevens Act allows for challenges to "actions that are taken . . . under regulations which implement a fishery management plan," *Id.* § 1855(f)(2); *see* Pls' Br. 56–57. But what Plaintiffs miss is that, although the Act permits challenges to actions taken under regulations which implement a fishery management plan (e.g., closure of a fishery based on criteria in regulations), the Act does not reopen previously issued regulations to judicial review. Such a reading of the Act would effectively nullify the 30-day limitations period for challenges to Fisheries Service regulations, contravening this Court's observation that "the 30-day deadline in § 1855(f) for seeking judicial review impl[ies] a congressional preference for immediate resolution." *Oceana, Inc. v. Locke*, 670 F.3d 1238, 1243 n.* (D.C. Cir. 2011). Allowing parties to bring a collateral attack on long-since-issued regulations would circumvent this preference for immediate resolution and would fail to

provide the government and private parties with the certainty that the 30-day limitations period is meant to provide.

While Plaintiffs could hypothetically timely challenge the substance of the 2023 and 2024 temporary rules, such as challenging the length of the fishing season in each rule, their claims here challenge those rules only insofar as they are the most recent implementations of the underlying annual catch limits set in the Amendment 43 regulations. *See* ECF 26-3 at 4 ("The 2023 Temporary Rule establishes the dates of opening and closure of the South Atlantic red snapper fisheries for the 2023 calendar year, thereby implementing the red snapper annual catch limit established under the Amendment 43 regulations."). But the Magnuson–Stevens Act does not renew the 30-day limitations period for judicial review of Fisheries Service regulations every time that the agency takes some action that rests upon a previously implemented regulation; to the contrary, the Act's statute of limitations is strictly construed. *Crim v. Comm'r of Internal Revenue*, 66 F.4th 999, 1001 (D.C. Cir. 2023) ("Statutes of limitations against the government are 'strictly construed.'" (citation omitted)).

Plaintiffs cannot rely on artful pleading to avoid the statute of limitations. *See Turtle Island Restoration Network*, 438 F.3d at 945 ("To allow parties to avoid this limitation through manipulation of form—avoiding mention of the Magnuson Act in the complaint—while in substance challenging the regulations, would permit parties through

26

careful pleading to avoid the strict jurisdictional limits imposed by Congress." (cleaned up)). While this Court has not yet addressed this issue, many district courts have routinely rejected plaintiffs' attempts to reframe their complaints where the substance of the complaint challenges the merits of a past Fisheries Service regulation. *See Kramer v. Mosbacher*, 878 F.2d 134, 137 (4th Cir. 1989) ("The district courts which have considered the issue have almost universally agreed that the thirty day limit commences at the time the regulations are published and that this limit is to be strictly construed.").[2]

Although Plaintiffs purport to challenge the 2023 and 2024 temporary rules, Plaintiffs are challenging the merits of Amendment 43

---

[2] *See also, e.g.*, *Martha's Vineyard/Dukes Cty. Fisherman's Ass'n v. Locke*, 811 F. Supp. 2d 302, 306–07 (D.D.C. 2011) ("[I]t is clear from the face of the complaint that [plaintiffs'] allegations, in substance, are challenges to the existing [fishery management plans] . . . . parties cannot avoid th[e 30-day] limitations period through careful pleading where, in substance, the parties are challenging existing regulations."); *Oceana v. Bryson*, 940 F. Supp. 2d 1029, 1048 (N.D. Cal 2013) (holding that a challenge to an amendment's method for specifying optimum yield was untimely because the challenge concerned problems first introduced in a prior amendment and that prior amendment was not changed in any meaningful way in the more recent action); *N.C. Fisheries Ass'n v. Evans*, 172 F. Supp. 2d 792, 799 (E.D. Va. 2001) (holding that a challenge to fishery management measures stemmed from a previously issued amendment and not from a more recent rule and were thus untimely); *F/V Robert Michael, Inc. v. Kantor*, 961 F. Supp. 11, 15 (D. Me. 1997) (rejecting a challenge to a Fisheries Service permit denial because plaintiffs' claims challenged "the regulation itself," not the agency's "subsequent actions interpreting the regulation").

and seeking relief with respect to that rule. Plaintiffs' challenge to the underlying methodology of Amendment 43 is time-barred because it should have been brought within 30 days of when the Fisheries Service promulgated the Amendment 43 regulations. 16 U.S.C. § 1855(f)(1).

### B.  The Ninth and Eleventh Circuit decisions reaching this question are inapposite and wrong.

To be sure, two courts of appeals have interpreted the Magnuson–Stevens Act to allow parties to challenge a prior regulation via a recent Fisheries Service action applying that regulation. *See* Pls' Br. 57 (citing *Oregon Trollers Ass'n v. Gutierrez*, 452 F.3d 1104, 1113–14 (9th Cir. 2006); *Gulf Fishermen's Ass'n v. Gutierrez*, 529 F.3d 1321, 1322 (11th Cir. 2008)). But those cases are distinguishable, and, in any event, this Court should not follow those cases because doing so would effectively render the 30-day limitations period meaningless.

In *Oregon Trollers Association*, plaintiffs challenged both a 2005 agency "action" that provided management measures for the salmon fishing season as well as a 1989 regulation. 452 F.3d at 1111. The Ninth Circuit held that because the 2005 regulatory measure was an "action" that was promulgated under the 1989 regulation, the plaintiffs' challenge to the 1989 regulation was not time barred. *Id.* at 1113; *but see Norbird Fisheries v. Nat'l Marine Fisheries Serv.*, 112 F.3d 414, 416 (9th Cir. 1997) (holding that a 1994 challenge to a permit denial that applied a set of 1992 regulations was time-barred). Likewise, in *Gulf*

*Fisherman's Association*, the Eleventh Circuit relied on *Oregon Trollers Association* in holding that plaintiffs could challenge an underlying regulation beyond the thirty days after its publication where there had been a subsequent agency action under that regulation. 529 F.3d at 1323. Both courts reasoned that litigants should be permitted to obtain review of a regulation at the time they are aggrieved, not when the regulation was published. *Oregon Trollers Ass'n*, 452 F.3d at 1113–14 ("[A]n affected party is unlikely to challenge a regulation until the regulation has a discernable practical application—that is, until the agency takes an action under the regulation that has a material adverse effect on that party."); *Gulf Fisherman's Ass'n*, 529 F.3d at 1324 ("In many instances, it is only when such a[] [later-in-time] action is taken that participants in the fishery can assess whether a petition for judicial review is necessary.") (quoting S. Rep. No. 101–414).

This reasoning does not apply here. Plaintiffs knew about the Fisheries Service's decision to exclude dead discards from the annual catch limit long before the agency issued its 2023 and 2024 temporary rules. But they chose not to challenge the agency's methodology in 2018, and they should not get a second (and third) bite at the apple merely because the Fisheries Service issued temporary rules using the same methodology that it used in 2018. To the extent that the 2018 regulation had a "material adverse effect" on Plaintiffs, Plaintiffs were able to "assess whether a petition for judicial review [was] necessary" at

that time. *Oregon Trollers Ass'n*, 452 F.3d at 1113–14; *Gulf Fisherman's Ass'n*, 529 F.3d at 1324. Thus, the situation here is different from the situations in *Oregon Trollers Association* and *Gulf Fisherman's Association*.[3]

In any event, neither of these opinions are persuasive because they contravene the Magnuson–Stevens Act's command to ensure expeditious judicial review and to provide certainty for agencies and regulated parties. The judicial-review provisions of the Act provide for expedited review to reflect the time-sensitive nature of fishery management regulatory actions. For example, some fisheries are open for only a short period of time and then closed with relatively little advance notice. Congress balanced the need to have expedited judicial review with the need for the agency and the regulated community to have assurance that applicable regulations and fishery management actions will not remain open to legal challenge for an indeterminate period of time. Thus, Congress provided for expedited judicial review, the short 30-day limitations period, an expedited period to file an answer, and an expedited date for producing administrative records. 16

---

[3] This reading is consistent with the Supreme Court's recent decision in *Corner Post, Inc. v. Board of Governors of Federal Reserve System*. 603 U.S. 799, 809 (2024). There, the Court held that a right of action under the Administrative Procedure Act ("APA") accrues when a plaintiff suffers an injury from final agency action. Here, Plaintiffs suffered their alleged injury when the Fisheries Service set red snapper annual catch limits in 2018.

U.S.C. § 1855(f). The Act also provides that injunctive relief under 5 U.S.C. § 705 is not available. 16 U.S.C. § 1855(f)(1)(A).

These limitations collectively "demonstrate Congress's intent to ensure that regulations promulgated under the Magnuson Act are effectuated without interruption and that challenges are resolved swiftly." *Turtle Island Restoration Network*, 438 F.3d at 948. Contrary to the reasoning in *Oregon Trollers Association* and *Gulf Fisherman's Association*, the fact that Congress expressly made certain agency actions (in addition to regulations) reviewable does not indicate an intent to reopen the limitations period for review of the substance of an underlying regulation every time the Fisheries Service takes some action based on the regulation. Such an interpretation would effectively nullify the 30-day limitations period for regulations and would undermine congressional intent as expressed by the Magnuson–Stevens Act's provisions for expedited judicial review. *See* 16 U.S.C. § 1855(f).

At bottom, all of Plaintiffs' claims here challenge the methodology that the Fisheries Service used to set the annual catch limits in Amendment 43 was flawed. But Plaintiffs did not challenge Amendment 43 within the 30-day limitations period and instead waited five years to file their suit. Their challenge is time-barred.

III. **The Fisheries Service complied with the Magnuson–Stevens Act.**

If this Court reaches the merits of Plaintiffs' claim it should affirm the district court's judgment[4]. Plaintiffs' claim fails on the merits both because it is foreclosed by binding Circuit precedent and because it is incorrect as a matter of statutory interpretation.

A. ***A.P. Bell Fish Company* is dispositive and forecloses Plaintiffs' claim.**

The Magnuson–Stevens Act requires the Fisheries Service to set an "annual catch limit" such that "overfishing does not occur." 16 U.S.C. § 1853(a)(15). Plaintiffs contend that the Fisheries Service violated that statutory command when it set the annual catch limit for the South Atlantic red snapper fishery in terms of total landings and not landings plus dead discards. *See* Pl's Br. 40. That argument is precluded under binding Circuit precedent.

In *A.P. Bell Fish Company, Inc. v. Raimondo*, this Court considered a nearly identical challenge to a different fishery management plan governing reef fish in the Gulf of Mexico that modified the allocation of red grouper between commercial and recreational sectors. 94 F.4th 60, 65 (D.C. Cir. 2024). As here, the *A.P. Bell* plaintiffs argued that Fisheries Service regulations violated 16

---

[4] This Court need not address the statute of limitations question to affirm the district court's judgment on the merits. *See, e.g., Am. Hosp. Ass'n v. Azar*, 964. F.3d 1230, 1246 (D.C. Cir. 2020).

U.S.C. § 1853(a)(15) by failing to establish "catch limits" because the regulations set the overfishing limit in terms of landings rather than total catch (which would include dead discards). *A.P Bell Fish Co.*, 94 F.4th at 65. This Court rejected that argument, concluding that "[t]he overfishing limit . . . accounts for all sources of mortality, including bycatch, because the stock assessment factors in that mortality." *Id* (cleaned up). This Court held that the Fisheries Service complied with the statute for two reasons. First, the agency factored dead discards into its general process of setting the overfishing limit and acceptable biological catch. Second, 16 U.S.C. § 1853(a)(15) only requires that the Fisheries Service set an annual catch limit such that overfishing does not occur—it does not require the agency to directly account for bycatch (and dead discards) in an annual catch limit. *A.P. Bell Fish Co.*, 94 F.4th at 65.

*A.P. Bell* resolves this case. Plaintiffs' claim is nearly identical to the claim this Court resolved in *A.P. Bell*. As in that case, Plaintiffs here argue that § 1853(a)(15) requires the Fisheries Service to include dead discards when setting the annual catch limit. *See A.P. Bell Fish Co.*, 94 F.4th at 65. This Court has held that such an argument is not correct as a matter of statutory interpretation because nothing in the text of § 1853(a)(15) requires the Fisheries Service to set annual catch limits or overfishing limits that directly include or limit bycatch. *A.P. Bell Fish Co.*, 94 F.4th at 65. The Court is bound to follow that

precedent in this case. The district court correctly found that the reasoning of *A.P. Bell* "is controlling here." ECF 44 at 28.

In attempting to avoid this conclusion, Plaintiffs devote significant effort to arguing that *A.P. Bell* was wrongly decided. Pl's Br. 44–52. But this panel may not depart from prior Circuit precedent merely if it disagrees with the prior decision. Rather, the panel is bound by prior precedent "unless intervening Supreme Court precedent clearly dictates a departure." *Alpine Securities Corp. v. Financial Industry Regulatory Auth.*, 121 F.4th 1314, 1334 (D.C. Cir. 2024) (quoting *Bahlul v. United States*, 77 F.4th 918, 926 (D.C. Cir. 2023)) (cleaned up). And Plaintiffs have pointed to no such intervening Supreme Court precedent that was decided since the *A.P. Bell* decision in March 2024.

Instead, Plaintiffs offer five avenues by which this Court could distinguish, ignore, or overrule *A.P. Bell*. Pl's Br. 53–56. But none of these arguments should outweigh *A.P. Bell's* straightforward holding that controls this case.

First, Plaintiffs suggest that this Court should read *A.P. Bell* narrowly by distinguishing the facts from the facts in this case. Pl's Br. 53. Plaintiffs argue that, because the *A.P. Bell* decision did not give particular detail as to how prevalent dead discards were for the fishery at issue in that case, the Court here "lack[s] the necessary facts to analogize from *A.P. Bell* to the situation at hand." *Id.* But *A.P. Bell* did not turn on the specific facts surrounding the fishery at issue because

the Court held that, as a legal matter, the Magnuson–Stevens Act did not require the Fisheries Service to include dead discards in its calculations of overfishing limits and annual catch limits. *A.P Bell Fish Co.*, 94 F.4th at 65. Plaintiffs cannot avoid a conclusion based on statutory interpretation by arguing that the Court does not have sufficient facts to analogize to that case.

Second, Plaintiffs ask this Court to distinguish the legal holding in *A.P. Bell* from the legal question here. Pl's Br. 53–54. Plaintiffs argue that "[v]iewed narrowly," *A.P. Bell* could be read as only applying to whether the overfishing limit, not the annual catch limit, needs to include dead discards. *Id.* But the *A.P. Bell* decision *does* address the annual catch limits. It explains that "annual catch limits are based on [the] overfishing limit" and thus the annual catch limits account for dead discards in the same fashion as the overfishing limit. *A.P Bell Fish Co.*, 94 F.4th at 65. Because the annual catch limit is generally based on the overfishing limit, it would make little sense for the Court to permit the Fisheries Service to exclude dead discards from the overfishing limit but require the agency to include dead discards in the annual catch limit.[5] Furthermore, *A.P. Bell* explains that nothing in the text of the

---

[5] To the extent that Plaintiffs argue that the *A.P. Bell* holding is dicta, that argument is wrong. The conclusion that the Fisheries Service may exclude dead discards from the annual catch limit under the Magnuson–Stevens Act flows directly from the Court's holding in *A.P. Bell*.

Magnuson–Stevens Act requires the Fisheries Service to directly account for bycatch; the Act only requires the agency to set an annual catch limit that it determines will prevent overfishing. *Id.* Plaintiff asserts that *A.P. Bell's* holding is confined to the overfishing limit, not the annual catch limit, but that does not follow from the opinion itself. *See Alpine Securities Corp.*, 121 F.4th at 1335 ("This [C]ourt's historic practice of faithful panel adherence to circuit precedent cannot be circumvented by pretending a prior decision said something it plainly did not.").

Third, Plaintiffs argue that the Court should ignore *A.P. Bell's* holding because that case's analysis "more resemble[s] a summary disposition than a precedential opinion." Pl's Br. 54–55. But Plaintiffs point to no case in which this Court ignored a prior panel's published decision based on the breadth of that prior analysis. The mere fact that *A.P. Bell's* discussion of dead discards is relatively short does not mean that this panel is free to disregard its legal conclusion that, under the Magnuson–Stevens Act, the Fisheries Service may exclude dead discards from its annual catch limit.

Fourth, Plaintiffs request that this Court overrule *A.P. Bell* via an *Irons* footnote. In *Irons v. Diamond*, 670 F.2d 265, 267–68 & n.11 (D.C. Cir. 1981), this Court noted that a portion of the panel decision which resolved a conflict between two prior decisions had been approved and considered by the full court and thus constituted the law of the Circuit.

But the issue of statutory interpretation here is not "the kind of minor or marginal issue, nor one on which [the Court's] precedents have been shown by intervening decisions to be clearly incorrect, such as might call for reversal in an *Irons* footnote." *Nat'l Assoc. for Surface Finishing v. EPA*, 795 F.3d 3, 8 n.4 (D.C. Cir. 2015) (citing *Irons*, 670 F.2d at 267–68 & n.11). This Court should decline to issue an *Irons* footnote and should instead follow *A.P. Bell*.[6]

At bottom, *A.P. Bell* is a precedential decision that is directly on point and should control this Court's analysis of the merits. That is as far as this Court needs to go to decide this case.

## B. The Fisheries Service complied with the Magnuson–Stevens Act.

Even if this Court finds that this case is not moot, Plaintiff's challenge is timely, and *A.P. Bell* does not control, Plaintiff's claim is nonetheless wrong as a matter of statutory interpretation. The Fisheries Service complied with the Magnuson–Stevens Act because it set an annual catch limit designed to prevent overfishing and because

---

[6] If all else fails, Plaintiffs ask this Court to request a full en banc hearing in lieu of issuing a panel decision. Pl's Br. 56. But initial hearing en banc "is not favored and ordinarily will not be ordered," Fed. R. App. P. 40(g), and Plaintiffs have not explained why this case meets that high standard. Indeed, this case meets none of the criteria for even an ordinary en banc hearing because *A.P. Bell* does not conflict with any decision of the Supreme Court or another Circuit Court and because the case does not present a question of exceptional importance. *See* Fed. R. App. P. 40(b)(2).

nothing in the Act requires the agency to included dead discards in the annual catch limit.

> ### 1. On their face, Amendment 43 and the temporary rules comply with the Magnuson–Stevens Act by setting an annual catch limit at a level to prevent overfishing.

The Magnuson–Stevens Act requires the Fisheries Service to set an "annual catch limit" such that "overfishing does not occur." 16 U.S.C. § 1853(a)(15). On their face, Amendment 43 and the temporary rules comply with the statutory mandate.

The Magnuson–Stevens Act does not define "annual catch limit," the only textual constraint on the Fisheries Service's ability to set an annual catch limit is that the agency must set it at a level such that overfishing does not occur. *Id.* § 1853(a)(15). The Fisheries Service offered a reasoned explanation for why the catch limits it set in Amendment 43 and the temporary rules complied with that statutory mandate.

Amendment 43 sets a total annual catch limit of 42,510 fish divided between the commercial and recreational sectors. 83 Fed. Reg. at 35,429, AR010023. Amendment 43 and the temporary rules also include measures to ensure accountability with that catch limit, such as setting opening and closing dates for the recreational fishing season. *See* 83 Fed. Reg. at 35,435, AR000001.

The Fisheries Service explained how it relied on the best scientific information available in deciding not to rely on dead-discard estimates when setting the red snapper annual catch limits in Amendment 43 and the temporary rules. Then-available red snapper discard estimates were considered insufficiently reliable. 83 Fed. Reg. at 35,431. Among other things, the data was dependent upon recreational fisher's recall and based upon small sample sizes. *Id.*; *see also* AR007037 ("The use of an [acceptable biological catch] based primarily on fishery discards for monitoring the effectiveness of management action is likely ineffective due to the high level of uncertainty in measures of discards and the change in the effort estimation methodology that will be implemented in the MRIP survey.").

Even though the Fisheries Service did not include dead discards in the annual catch limit, the agency still accounted for dead discards in the scientific process for setting the overfishing limit and the acceptable biological catch in the Amendment 43 final rule (as in *A.P. Bell*). *See* AR005053.  The Fisheries Service then set the annual catch limit at a level below both the acceptable biological catch and the overfishing limit, providing for nearly a 20 percent buffer between the catch limit and the acceptable biological catch. AR009959.[7]

---

[7] The total (combined commercial and recreational) annual catch limit of 42,510 fish adopted by the Fisheries Service pursuant to the Amendment 43 Final Rule was less than the total acceptable biological

The Fisheries Service also outlined how its annual catch limits were set at a level such that overfishing did not occur. The agency pointed to recent stock assessments that showed there were substantial gains in stock abundance and that red snapper stock was rebuilding. 83 Fed. Reg. at 35,421, AR010025. In spite of the stock being overfished, an increase in red snapper biomass and an increasing abundance of older fish both showed that the stock was rebuilding. AR010025; AR006863. The stock can be both "overfished" and "rebuilding" because, even if the population of the stock is low (i.e., the stock is overfished), the rate of recovery of the stock can also be positive (i.e., the stock is rebuilding).

At bottom, the Amendment 43 final rule and the temporary rules were informed by the best scientific information available on dead discards as well as the rebuilding status of red snapper stock. The Fisheries Service reasonably determined that, although there was incomplete and uncertain data about discards, there was still sufficient information to conclude that the rules would prevent overfishing and continue rebuilding red snapper stock. This conclusion was consistent with the Magnuson–Stevens Act, which provides that "[c]onservation and management measures shall be based on the best scientific information available." 16 U.S.C. § 1851(a)(2); *see also* 50 C.F.R.

---

catch of 53,000 fish as recommended by the South Atlantic Council's scientific and statistical committee. *See* AR 009959.

600.315(e)(2) ("The fact that scientific information concerning a fishery is incomplete does not prevent the preparation and implementation of a[] [fishery-management plan]."). The Fisheries Service made a reasonable scientific assessment in setting the annual catch limit and relied on its technical judgment in determining that it was not appropriate to rely on dead-discard estimates when doing so. This is precisely the kind of determination within the agency's expertise that is owed deference under the APA. *Seven Cty. Infrastructure Coalition v. Eagle Cty.*, 145 S. Ct. 1497, 1512 (2025) ("Black-letter administrative law instructs that when an agency makes those kinds of speculative assessments or predictive or scientific judgments, and decides what qualifies as significant or feasible or the like, a reviewing court must be at its 'most deferential.'" (citation omitted)); *Nat'l Ass'n of Clean Water Agencies v. Envtl. Prot. Agency*, 734 F.3d 1115, 1138 (D.C. Cir. 2013) ("[W]e give substantial deference to an agency's expert scientific judgment.").

Plaintiffs acknowledge that they do not challenge the Fisheries Service's scientific analysis or numerical determinations of the annual catch limit. Pls' Br. 33. Instead, they argue that the Fisheries Service's choice to exclude dead discards from the annual catch limit facially violates the Magnuson–Stevens Act. *Id.* But that argument finds no support in the statutory text.

### 2. The Magnuson–Stevens Act does not require the Fisheries Service to include dead discards in the annual catch limit.

Nothing in the text of the Magnuson–Stevens Act requires the Fisheries Service to include dead discards in the annual catch limit. In arguing otherwise, Plaintiffs simply reiterate the tautology that an annual catch limit must "limit" the "catch" of a stock. Pls' Br. 38–40. But of course, Amendment 43 and the temporary rules do set annual catch limits that limit red snapper catch—they just do not do so in precisely the way that Plaintiffs' wanted them to because they exclude dead discards from the limit itself. And, as explained above, the Fisheries Service provided a reasoned explanation, supported by scientific evidence (that Plaintiffs do not dispute) as to why it did so. *See supra* TK.

Plaintiffs' argument about the statutory construction of the word "catch"—that the term, according to its ordinary language includes both dead discards and landings—is not persuasive. Because Congress did not define the term "catch" in the Magnuson–Stevens Act, the Court should look at the term's ordinary meaning in the context of the language and design of the statute as a whole. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). The Magnuson–Stevens Act as a whole is focused on ensuring that the Fisheries Service sets annual catch limits and makes fishery management decisions based on the best scientific

information available. 16 U.S.C. § 1851(a)(2). The Fisheries Service explained that the red snapper discard estimates were unreliable, and thus reasonably chose not to include dead discards in setting the annual catch limits. 83 Fed. Reg. at 35,431.[8]

Plaintiffs' argument seems to hinge on their claim that an annual catch limit that excludes dead discards neither limits the catch of red snapper stock nor can prevent overfishing. But that is an argument challenging the adequacy of the agency's explanation, not a statutory argument about the definition of the words "catch" and "limit." And, in any event, the Fisheries Service's analysis directly contradicts this argument. The agency explained why it didn't rely on the dead-discard estimates and why, even putting dead discards aside, the annual catch limits would prevent overfishing because the red snapper stock is rebuilding and gaining biomass. Plaintiffs have not shown that the Fisheries Service's methodology violates the Magnuson–Stevens Act.

---

[8] The fact that the Fisheries Service's regulatory guidelines state that "catch" generally includes "fish that are retained for any purpose" does not change things. 50 C.F.R. § 600.310(f)(1)(i). The Act states that the guidelines do not have the force and effect of law, 16 U.S.C. § 1851(b), and the Fisheries Service may depart from the guidelines when it provides a reasoned explanation as to why, consistent with the Act's mandates. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). It did so here.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the appeal as moot or should affirm the judgment of the district court.

Respectfully submitted,

/s/ *Ezekiel A. Peterson*
ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*

THEKLA HANSEN-YOUNG
Of Counsel:                                  MARK A. BROWN
                                             KAMELA A. CASCHETTE
ANNE KERSTING                                EZEKIEL A. PETERSON
MONICA SMIT-BRUNELLO                          *Attorneys*
*Attorneys*                                   Environment & Natural Resources Div.
U.S. Department of Commerce                   U.S. Department of Justice
NOAA Office of General Counsel                999 18th St, North Terrace, Suite 600
                                             Denver, CO 80202
                                             (202) 598-6399
                                             ezekiel.a.peterson@usdoj.gov

September 25, 2025
90-8-8-08644

44

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) this document contains 10,128 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font.

/s/ *Ezekiel A. Peterson*
EZEKIEL A. PETERSON

Counsel for Appellees

## CERTIFICATE OF SERVICE

I certify that on September 25, 2025, I electronically filed the foregoing document using the Court's CM/ECF system, which will notify all counsel of record.

/s/ *Ezekiel A. Peterson*
EZEKIEL A. PETERSON

Counsel for Appellee

# ADDENDUM

16 U.S.C. § 1851 ................................................................ 2a

16 U.S.C. § 1853 ................................................................ 3a

16 U.S.C. § 1855 ................................................................ 4a

## 16 U.S.C. § 1851

*National standards for fishery conservation and management*

**(a)   In general**

Any fishery management plan prepared, and any regulation promulgated to implement any such plan, pursuant to this subchapter shall be consistent with the following national standards for fishery conservation and management:

> **(1)** Conservation and management measures shall prevent overfishing while achieving, on a continuing basis, the optimum yield from each fishery for the United States fishing industry.

> **(2)** Conservation and management measures shall be based upon the best scientific information available.

> \* \* \*

**(b)   Guidelines**

The Secretary shall establish advisory guidelines (which shall not have the force and effect of law), based on the national standards, to assist in the development of fishery management plans.

## 16 U.S.C. § 1853

*Contents of fishery management plans*

### (a)   Required Provisions

Any fishery management plan which is prepared by any Council, or by the Secretary, with respect to any fishery, shall—

(1) contain the conservation and management measures, applicable to foreign fishing and fishing by vessels of the United States, which are—

(A) necessary and appropriate for the conservation and management of the fishery, to prevent overfishing and rebuild overfished stocks, and to protect, restore, and promote the long-term health and stability of the fishery;

(B) described in this subsection or subsection (b), or both; and

(C) consistent with the national standards, the other provisions of this chapter, regulations implementing recommendations by international organizations in which the United States participates (including but not limited to closed areas, quotas, and size limits), and any other applicable law;

* * *

(15) establish a mechanism for specifying annual catch limits in the plan (including a multiyear plan), implementing regulations, or annual specifications, at a level such that overfishing does not occur in the fishery, including measures to ensure accountability.

3a

## 16 U.S.C. § 1855

### *Other requirements and authority*

\* \* \*

**(f)    Judicial Review**

**(1)** Regulations promulgated by the Secretary under this chapter and actions described in paragraph (2) shall be subject to judicial review to the extent authorized by, and in accordance with, chapter 7 of Title 5, if a petition for such review is filed within 30 days after the date on which the regulations are promulgated or the action is published in the Federal Register, as applicable; except that—

> **(A)** section 705 of such title is not applicable, and

> **(B)** the appropriate court shall only set aside any such regulation or action on a ground specified in section 706(2)(A), (B), (C), or (D) of such title.

**(2)** The actions referred to in paragraph (1) are actions that are taken by the Secretary under regulations which implement a fishery management plan, including but not limited to actions that establish the date of closure of a fishery to commercial or recreational fishing.

**(3) (A)** Notwithstanding any other provision of law, the Secretary shall file a response to any petition filed in accordance with paragraph (1), not later than 45 days after the date the Secretary is served with that petition, except that the appropriate court may extend the period for filing such a response upon a showing by the Secretary of good cause for that extension.

> **(B)** A response of the Secretary under this paragraph shall include a copy of the administrative record for the regulations that are the subject of the petition.

4a

**(4)** Upon a motion by the person who files a petition under this subsection, the appropriate court shall assign the matter for hearing at the earliest possible date and shall expedite the matter in every possible way.

* * *