ORAL ARGUMENT NOT YET SCHEDULED

No. 25-5042

_____

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

SLASH CREEK WATERWORKS, INC.,
TILMAN GRAY, doing business as Avon Seafood,
ANTONIO GIAMBANCO, and J. RYAN SPECKMAN,

*Plaintiffs-Appellants*,

v.

HOWARD W. LUTNICK, in his official capacity as Secretary of
Commerce, and NATIONAL MARINE FISHERIES SERVICE,

*Defendants-Appellees*.

_____

On appeal from the United States District Court for the District of Columbia
No. 1:23-cv-1755-RC (Hon. Rudolph Contreras)

_____

**REPLY BRIEF OF APPELLANTS**

_____

SETH L. ATKINSON
Quillback Consulting
540 Meder Street
Santa Cruz, CA 95060
(203) 331-2792
seth@quillbackconsulting.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

GLOSSARY .................................................................................... vi

INTRODUCTION ............................................................................1

SUMMARY OF ARGUMENT ...........................................................1

ARGUMENT ..................................................................................3

I.    This Case Is Timely Based on the Express Reopener Provision
      at 16 U.S.C. § 1855(f) ...........................................................3

      A.    The 1990 Amendments Permit Judicial Review of Underlying
            Regulations Upon Timely Challenge to an Implementing
            Action..........................................................................3

      B.    Defendants' Interpretation of 16 U.S.C. § 1855(f) Would Erase
            the 1990 Amendments...................................................9

      C.    There Is No "Impact" or "Adverse Effect" Condition in
            16 U.S.C. § 1855(f)......................................................10

II.   Amendment 59 Did Not Moot This Litigation.............................13

      A.    The Amendment 43 Annual Catch Limit Mechanism
            Remains in Effect.........................................................13

      B.    Preamble Text in Amendment 59 Changes Nothing...........14

      C.    Defendants Did Not Affirmatively Readopt the Challenged
            Decision in Amendment 59............................................17

      D.    Republication of 50 C.F.R. § 622.193(y) Does Not Moot
            This Challenge in Any Event ..........................................19

III.  Defendants Lack a Viable Interpretation of 16 U.S.C. § 1853(a)(15) ..........20

IV.   Defendants Offer No Substantive Defense of *A.P. Bell* ................23

IV.     This Court Can and Should Address the Problem..........................................24

CONCLUSION ................................................................................28

CERTIFICATE OF COMPLIANCE .......................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                **Page**

*A.P. Bell Fish Co. v. Raimondo*,
    94 F.4th 60 (D.C. Cir. 2024).........................................2, 23, 24, 25, 26, 27, 28

*Agudas Chasidei Chabad v. Russian Federation*,
    110 F.4th 242 (D.C. Cir. 2024) ...................................................................27

*American Freedom Defense Initiative v. WMATA*,
    901 F.3d 356 (D.C. Cir. 2018).....................................................................20

*AT&T Corp. v. FCC*,
    970 F.3d 344 (D.C. Cir. 2020).....................................................................15

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) ..............................................................................11, 12

*Climate United Fund v. Citibank, N.A.*,
    (D.C. Cir. Sept. 2, 2025) (slip op.) .............................................................26

*Connecticut v. Daley*,
    53 F. Supp. 3d 147 (D. Conn. 1999) ............................................................7

*De Csepel v. Republic of Hungary*,
    859 F.3d 1094 (D.C. Cir. 2017)...................................................................26

\* *Gulf Fishermen's Association v. Gutierrez*,
    529 F.3d 1321 (11th Cir. 2008) .....................................................6, 9, 11, 12

*Gulf of Maine Fisherman's Alliance v. Daley*,
    292 F.3d 84 (1st Cir. 2002).....................................................................17, 18

*In re Executive Office of the President*,
    215 F.3d 20 (D.C. Cir. 2000)......................................................................26

*In re Sealed Case*,
    181 F.3d 128 (D.C. Cir. 1999).....................................................................27

*Islamorada Charter Boat Association v. Verity*,
    676 F. Supp. 244 (1988) ...............................................................................5

*Kramer v. Mosbacher*,
    878 F.2d 134 (4th Cir. 1989) ....................................................................4, 5

*Lewis v. Becerra*,
111 F.4th 65 (D.C. Cir. 2024) ........................................................26

*Midwater Trawlers Cooperative v. Mosbacher*,
727 F. Supp. 12 (D.D.C. 1989) .........................................................4

*National Association for Surface Finishing v. EPA*,
795 F3d 1 (D.C. Cir. 2015) ............................................................27

*National Food Processors Association v. Klutznick*,
507 F. Supp. 76 (D.D.C. 1981) ........................................................3

*Natural Resources Defense Council, Inc. v. Daley*,
209 F.3d 747 (D.C. Cir. 2000)........................................................22

*Natural Resources Defense Council v. EPA*,
559 F.3d 561 (D.C. Cir. 2009)........................................................15

* *Northeast Florida Chapter of the Association of General Contractors*
*of America v. City of Jacksonville*, 508 U.S. 656 (1993) .......................19, 20

*Oceana, Inc. v. Bryson*,
940 F. Supp. 2d 1029 (N.D. Cal. 2013)........................................7, 14, 17, 18

*Oceana, Inc. v. Evans*,
384 F. Supp. 2d 203 (D.D.C. 2005)...................................................7

* *Oregon Trollers Association v. Gutierrez*,
452 F.3d 1104 (9th Cir. 2006) ....................................................6, 7, 9, 11, 12

* *Owens v. BNP Paribas, S.A.*,
897 F.3d 266 (D.C. Cir. 2018)..............................................10, 11, 12, 22, 24

*Planned Parenthood of Wisconsin, Inc. v. Azar*,
942 F.3d 512 (D.C. Cir. 2019) ........................................................13

*Ross v. Blake*,
578 U.S. 632 (2016) ..............................................................10, 24

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998) .................................................................26

*United States v. Jones*,
846 F.3d 366 (D.C. Cir. 2017)........................................................26

*United States v. Munsingwear, Inc.*,
340 U.S. 36 (1950) .................................................................13

iv

*United States v. Weaver*,
808 F.3d 26 (D.C. Cir. 2015)..........................................................................25

*Van Buren v. United States*,
141 S. Ct. 1648 (2021) ...................................................................................10

\* Authorities upon which we chiefly rely are marked with an asterisk.


**Statutes**                                                                    **Page**

16 U.S.C. § 1801 ..............................................................................................1

16 U.S.C. § 1851(a) ........................................................................................22

16 U.S.C. § 1853(a)(15) .......................................................2, 14, 20, 22, 23, 26

16 U.S.C. § 1855(f) .....................................1, 2, 3, 5, 6, 7, 8, 9, 10, 11, 12

28 U.S.C. § 2401(a) .........................................................................................4

44 U.S.C. § 1510(a) ........................................................................................15

Fishery Conservation and Management Act of 1976,
Pub. L. No. 94–265, 90 Stat. 331 ...............................................................3, 22

Fishery Conservation Amendments of 1990,
Pub. L. No. 101–627, 104 Stat. 4436 ...............................................................5


**Other Authorities**                                                           **Page**

50 C.F.R. § 600.310..........................................................................................25

50 C.F.R. § 622.183(b)(5)(i)...............................................................................8

50 C.F.R. § 622.193(y) .........................................2, 8, 13, 14, 19, 20, 28

90 Fed. Reg. 3160 (Jan. 14, 2025).............................................................17, 18

90 Fed. Reg. 24,527 (June 11, 2025).........................13, 14, 15, 16, 17, 18

Fed. R. App. P. 40(b)(2)(D) ............................................................................28

U.S. Court of Appeals for the D.C. Circuit, Policy Statement
on *En Banc* Endorsement of Panel Decisions (Jan. 17, 1996) ......................27

H.R. Rep. No. 101–393 (1990)...........................................................................6

# GLOSSARY

| | |
|---|---|
| Plaintiffs | Plaintiffs-Appellants Slash Creek Waterworks, Inc., Tilman Gray d/b/a Avon Seafood, Antonio Giambanco, and J. Ryan Speckman |
| The Service | Defendants-Appellees National Marine Fisheries Service and Howard W. Lutnick |
| J.A. | Joint Appendix |
| APA | Administrative Procedure Act, 5 U.S.C. § 500 *et seq.* |
| Magnuson-Stevens Act (the Act) | Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. §§ 1801 *et seq.* |

## INTRODUCTION

This case boils down to whether the Court will allow Congress's words to have their intended effect. Defendants interpret two distinct sections of the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. § 1801 *et seq.*, so as to strip their meaning and neuter Congress's clear statements.

On timeliness, Defendants would prefer to ignore the 1990 amendments and pretend they had not happened.  On catch limits, Defendants revise history and interpret the 2006 amendments as being essentially optional—allowing the Service to exclude as much catch as it likes from the annual catch limit mechanism.

Both amendments were made for specific reasons, which Congress stated at the time and embodied in the enacted text.  Plaintiffs urge this Court to apply the ordinary tools of statutory interpretation and give effect to Congress's clearly expressed intent, as reflected in the text, structure, and history of these provisions.

## SUMMARY OF ARGUMENT

This case was timely filed under the express reopener provision located in 16 U.S.C. § 1855(f).  Plaintiffs challenged the 2023 Temporary Rule, which was an "action[]" under § 1855(f)(2).  The 2023 Temporary Rule implemented the Amendment 43 final rule, which itself constitutes a "regulation[]" under

§ 1855(f)(1).  The text and history of section 1855(f) as amended show Congress intended for both the "regulation" and "action" to be properly subject to judicial review, when an "action" is timely challenged.  Well-reasoned case law from other circuits supports this conclusion.

This case is not moot because the current annual catch limit mechanism for South Atlantic red snapper, which is codified at 50 C.F.R. 622.193(y), was established in all relevant respects by the Amendment 43 final rule.  The only changes Defendants have made since Amendment 43 are literally nominal—just adjustments to the numerical value of the catch limit.  The legal inadequacy of the mechanism stems from excluding dead discards from the enforceable "limit[]." 16 U.S.C. § 1853(a)(15).  That decision was made in Amendment 43 and has not been substantively revisited by Defendants since.

On the merits, Plaintiffs' opening brief explained why the text, structure, and history of 16 U.S.C. § 1853(a)(15) all lead to the conclusion that Defendants must actually "limit[]" the "catch" of South Atlantic red snapper.  Defendants offer little in opposition, instead hiding behind arguable dicta in *A.P. Bell Fish Co. v. Raimondo*, 94 F.4th 60 (D.C. Cir. 2024) ("*A.P. Bell*").  If this Court determines that *A.P. Bell* cannot be distinguished and represents a binding holding on the merits, then the Court should use an *Irons* footnote to overrule it.

## ARGUMENT

### I.     This Case Is Timely Based on the Express Reopener Provision at 16 U.S.C. § 1855(f)

Defendants argue this case is untimely because Plaintiffs filed suit within 30 days of the 2023 Temporary Rule, rather than within 30 days of the Amendment 43 final rule.  Defendants' Brief at 23–31.  Congress amended the Act in 1990, however, to allow this type of lawsuit to proceed.

#### A.     The 1990 Amendments Permit Judicial Review of Underlying Regulations Upon Timely Challenge to an Implementing Action

Section 305(f) of the Magnuson-Stevens Act provides for judicial review with a 30-day statute of limitations. *See* 16 U.S.C. § 1855(f).  This short statute of limitations was included in the original Act.  Fishery Conservation and Management Act of 1976, Pub. L. No. 94–265, § 305(d), 90 Stat. 331, 354.

In determining timeliness of lawsuits filed under the Act, courts from the outset applied traditional administrative law principles to define the scope of the challenged agency action.  Specifically, courts examined whether the decision that a plaintiff wished to challenge actually was made in the agency action being reviewed.  *See, e.g.*, *Nat'l Food Processors Ass'n v. Klutznick*, 507 F. Supp. 76 (D.D.C. 1981) (parsing which parts of a republished regulation could be deemed to have been decided in that action, versus which parts were simply a repackaging of

3

prior decisions).  If the record reflected genuine and sufficient agency consideration of an issue, then even a decision to maintain the status quo was deemed an affirmative, reviewable decision—thereby reopening the issue for judicial review.  *See, e.g.*, *Midwater Trawlers Coop. v. Mosbacher*, 727 F. Supp. 12, 15 (D.D.C. 1989) (noting the "settled doctrine that statute of limitations time periods are reopened when an agency publishes an existing rule in the Federal Register and solicits comments on the rule even if the agency ultimately decides not to alter the rule").

Under this traditional reopener doctrine, implementation actions generally are not deemed to reopen the underlying policy decisions that they implement.  The policy decision was made by the agency at an earlier point in time, and so long as the implementation action does not substantively reconsider the decision, it is not usable to challenge that prior decision.  *See, e.g.*, *Kramer v. Mosbacher*, 878 F.2d 134, 137 (4th Cir. 1989).  This outcome makes sense in contexts with longer statutes of limitations, *see, e.g.*, 28 U.S.C. § 2401(a) (providing APA six-year statute of limitations), because with a generous time period a plaintiff can directly challenge the agency action containing the substantive decision.

In the Magnuson-Stevens Act context, however, these general administrative law principles of reopener proved problematic.  With a 30-day statute of limitations, plaintiffs had to imagine all the possible ways that a regulation could

play out—or else risk being barred from challenging it in the future.  The textbook case was *Kramer v. Mosbacher*, in which fishermen were barred from challenging a catch regulation because by the time the Service implemented it, more than 30 days had elapsed from publication of the regulation.  878 F.2d at 137.  This was widely regarded as an unfair system.[1]

In response, Congress amended the Magnuson-Stevens Act in 1990, adding language specifically addressing implementation actions.  *See* Fishery Conservation Amendments of 1990, Pub. L. No. 101–627, § 111(b), 104 Stat. 4436, 4452–53.  The revised statute of limitations now reads:

(f) JUDICIAL REVIEW.—

(1) Regulations promulgated by the Secretary under this Act *and actions described in paragraph (2)* shall be subject to judicial review to the extent authorized by, and in accordance with, chapter 7 of title 5, United States Code, if a petition for such review is filed within 30 days after the date on which the regulations are promulgated *or the action is published in the Federal Register, as applicable*; except that—

> (A) section 705 of such title is not applicable, and

> (B) the appropriate court shall only set aside any such regulation or action on a ground specified in section 706(2)(A), (B), (C), or (D) of such title.

(2) *The actions referred to in paragraph (1) are actions that are taken by the Secretary under regulations which implement a fishery management plan, including but not limited to actions that establish the date of closure of a fishery to commercial or recreational fishing.*

---

[1] A few courts applied logical contortions to reach an outcome that seemed more fair, but these cases did not create workable precedent. *See, e.g.*, *Islamorada Charter Boat Ass'n v. Verity*, 676 F. Supp. 244 (S.D. Fla. 1988).

16 U.S.C. § 1855(f) (emphasis added).

In the years since, two appellate courts have addressed the effect of Congress's 1990 amendments. The Ninth Circuit in *Oregon Trollers Association v. Gutierrez* analyzed the statutory text and history, and confirmed that a timely challenge to an implementing "action" does allow reopening of an underlying "regulation" to challenge. 452 F.3d 1104, 1109–16 (9th Cir. 2006). In *Gulf Fishermen's Association v. Gutierrez*, the Eleventh Circuit did the same. 529 F.3d 1321, 1322 (11th Cir. 2008).

Both courts rested their holdings on the statutory text as amended, while also noting the legislative history. *See Oregon Trollers Ass'n*, 452 F.3d at 1113 ("[T]he 1990 amendment '[was] a direct response to a portion of the decision of the Fourth Circuit Court of Appeals in *Kramer*.'" (quoting H.R. Rep. No. 101–393, at 28 (1990))); *id.* at 1114 (quoting Senate and House Committee reports, as well as bill sponsor, all of which agreed amendments allowed judicial review "either when initial management plan regulations are issued or when implementing actions are put into effect" (cleaned up)); *Gulf Fishermen's Ass'n*, 529 F.3d at 1324 (same).

It is important to point out that not all judicial review cases under the Act have implementing "action" fact patterns. In most cases, the subject of challenge is a freestanding new regulation, not an implementation of a previous regulation. Ordinary administrative law principles continue to be applied in these cases—even

after the 1990 amendments—to determine the scope of the challenged action, and which topics are open (or foreclosed) for judicial review. *E.g.*, *Oceana, Inc. v. Bryson*, 940 F. Supp. 2d 1029, 1043–46 & n.5 (N.D. Cal. 2013) (carefully differentiating doctrinal reopener from express reopener provided by Congress in § 1855(f)); *Oceana, Inc. v. Evans*, 384 F. Supp. 2d 203, 246–47 (D.D.C. 2005) (applying traditional reopener doctrine to conclude that a new regulation had sufficiently overwritten a previous one as to render all issues reviewable); *Connecticut v. Daley*, 53 F. Supp. 2d 147, 161–62 (D. Conn. 1999) (similar analysis, concluding issue not reopened).

Thus the implementation "action" provision in § 1855(f) only applies to a subset of Magnuson-Stevens Act challenges, but when it does apply, its meaning is clear: "a petition filed within 30 days of the publication of an action," so long as the action meets the definition in § 1855(f)(2), "may challenge both the action and the regulation under which the action is taken." *Oregon Trollers*, 452 F.3d at 1113.

Here, Plaintiffs filed suit within 30 days of the 2023 Temporary Rule's publication in the Federal Register, explicitly asserting a challenge to both the temporary rule and the Amendment 43 final rule under 16 U.S.C. § 1855(f) as amended. *See* J.A. _____ (AR000001–02) (2023 Temporary Rule publication date of May 25, 2023); J.A._____ (ECF 1 at 26, 28, 33) (invocation of § 1855(f); filing date of June 16, 2023).

7

The Amendment 43 final rule is a "regulation" under 16 U.S.C. § 1855(f) because it made the substantive decisions regarding the red snapper annual catch limit mechanism. *See, e.g.*, J.A.\_\_\_\_\_ (AR010022–23) (describing decisions made in Amendment 43); J.A.\_\_\_\_\_ (AR006852–57) (same). The Amendment 43 regulation was published in the Federal Register, styled as a "Final Rule," J.A.\_\_\_\_\_ (AR010022), and it amended the relevant regulatory text at 50 C.F.R. § 622.193(y), J.A.\_\_\_\_\_ (AR010029).

The 2023 Temporary Rule meets the definition of an "action" under 16 U.S.C. § 1855(f). It "establish[ed] the date of closure of a fishery," which is one of the stated forms that an implementing "action" can take. 16 U.S.C. § 1855(f)(2); *see* J.A.\_\_\_\_\_ (AR000002) (establishing closure). It furthermore was "taken . . . under" the Amendment 43 final rule, per 16 U.S.C. § 1855(f)(2), because it operationalized the annual catch limit for South Atlantic red snapper established in Amendment 43. *Compare* J.A.\_\_\_\_\_ (AR010028–29) (Amendment 43 final rule establishing regulatory language at 50 C.F.R. § 622.183(b)(5)(i) and § 622.193(y)), *with* J.A.\_\_\_\_\_ (AR000002) ("This action is required by 50 CFR 622.183(b)(5)(i) and 622.193(y) . . . ."); *see also* J.A.\_\_\_\_\_ (AR000002) (asserting public comment "unnecessary because [Amendment 43] has already been subject to notice and comment"). Thus the underlying "regulation" and the "action" are tied together such that neither makes complete sense on their own, which is precisely what is

contemplated in § 1855(f) as amended.  *See Gulf Fishermen's Ass'n*, 529 F.3d at 1323 (scrutinizing logical connection between action and underlying regulation); *Oregon Trollers*, 452 F.3d at 1115–16 (same).

Because Plaintiffs timely challenged an "action" that implements a "regulation" under § 1855(f), both the action (the 2023 Temporary Rule) and the underlying regulation (the Amendment 43 final rule) are properly subject to challenge.

## B.     Defendants' Interpretation of 16 U.S.C. § 1855(f) Would Erase the 1990 Amendments

Defendants acknowledge Congress amended the statute of limitations in 1990.  *See* Defendants' Brief at 31.  They maintain, however, that "although the Act permits challenges to actions taken under regulations which implement a fishery management plan (e.g., closure of a fishery based on criteria in regulations), the Act does not reopen previously issued regulations to judicial review."  *Id.* at 25.

In Defendants' telling, the purpose of the 1990 amendments was to "expressly ma[ke] certain agency actions (in addition to regulations) reviewable."  *Id.* at 31.  Specifically, Defendants say it is now possible to "challenge the substance of the [implementation action], such as challenging the length of the fishing season" set in an action.  *Id.* at 26.

9

This is an incoherent interpretation of the 1990 amendments.  It always has been possible to challenge an implementation action.  If a plaintiff wanted to dispute the specifics of how an implementation action was carried out (for example, arguing the Service erroneously calculated the season length for that particular year), the door has always been open.  That type of case was viable pre-1990 *precisely because* it does not bring into play the underlying policy decisions made in the original "regulation."  *See supra* pages 3–4 (describing doctrinal principles of reopener).  So if the effect of the 1990 amendments was to allow such cases, as Defendants argue, then there was no effect at all.

Defendants' interpretation therefore fails.  *See Van Buren v. United States*, 141 S. Ct. 1648, 1660 (2021) (" 'When Congress amends legislation, courts must presume it intends the change to have real and substantial effect.'" (quoting *Ross v. Blake*, 578 U.S. 632, 641–642 (2016))); *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 278 (D.C. Cir. 2018) ("We generally presume that congressional amendments make substantive changes to existing law. We cannot instead act as though the amendment had not taken place." (cleaned up)); *United States v. El-Saadi*, 549 F.Supp.3d 148, 161 (D.D.C. 2021) (Moss, J.) (similar).

## C.     There Is No "Impact" or "Adverse Effect" Condition in 16 U.S.C. § 1855(f)

As a fallback, Defendants suggest the Court should graft some sort of impact requirement onto section 1855(f), such that reopener only would be available to a

10

plaintiff if they have recently realized they are being harmed by the underlying "regulation." *See* Defendants' Brief at 29–30.

Defendants grasp this thread from discussion in *Oregon Trollers* and *Gulf Fishermen's Association*. Both courts observed that in 1990, Congress was motivated to address the unfairness of the *Kramer* situation: a plaintiff being barred from challenging a "regulation" despite not clearly knowing how it would harm them at the time it was promulgated. *See Oregon Trollers*, 452 F.3d at 1113, 1113–14; *Gulf Fishermen's Ass'n*, 529 F.3d at 1324. While accurately describing Congress's motivation in 1990, this in no way provides the basis for the Court to add a new requirement to section 1855(f).

First (and by far most importantly), Congress did not include such a requirement in the statutory text. Likely understanding the morass it would open, Congress nowhere stated that plaintiffs may only receive statutory reopener the first time that an implementation "action" causes them to be aggrieved. *See* 16 U.S.C. § 1855(f). This omission is determinative. *See Owens*, 897 F.3d at 279 ("As *Central Bank* teaches, 'the statutory text controls . . .' [], and when the statutory text is silent there simply is no 'congressional intent to impose'" further provisions to the law (quoting *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 175 (1994))).

11

Legislative history can be useful, but only "as a way to understand the text" of a statute.  *Id.*; *cf.* Opening Brief at 34–40 (citing legislative history to support textual reading).  In suggesting the Court adopt some kind of impact requirement, Defendants "do not attempt to clarify the meaning of any words that appear in [the statute].  Instead, the[y] proffer[] legislative history . . . to *supplement* the [statute's] text and effectively 'amend the statute . . . .'"  *Owens*, 897 F.3d at 279 (emphasis in original) (quoting *Central Bank*, 511 U.S. at 177).  Such attempts must be rejected.

Second (and merely for context), this case demonstrates the headaches such a requirement would create.  The harm to Plaintiffs from Amendment 43 comes in part via harm to the red snapper stock, and that harm has become more and more apparent over the years—particularly as new stock assessments have been completed.  *See* Opening Brief at 16 (SEDAR 73); *id.* at 18 (SEDAR 73 update).  When did it finally become clear that Amendment 43 was harming the fish stock and Plaintiffs sufficiently for reopener?  This kind of line-drawing is not feasible.  Fortunately it is not necessary, given the plain text at 16 U.S.C. § 1855(f).  *See Oregon Trollers*, 452 F.3d at 1113 (holding based on "straightforward text[]"); *Gulf Fishermen's Ass'n*, 529 F.3d at 1324 ("[W]e find the language of § 1855(f) to be plain and unambiguous . . . .").

## II.    Amendment 59 Did Not Moot This Litigation

Defendants argue this case is moot because earlier this year the Service promulgated Amendment 59, a regulation that among other things adjusted the numerical value of the red snapper annual catch limit.  *See* Defendants' Brief at 16–23; 90 Fed. Reg. 24,527 (June 11, 2025) (Amendment 59 final rule). Defendants are wrong.[2]

### A.    The Amendment 43 Annual Catch Limit Mechanism Remains in Effect

The annual catch limit mechanism for South Atlantic red snapper is codified at 50 C.F.R. § 622.193(y).  The regulatory language there establishes an annual limit on landings of red snapper (split between recreational and commercial), and provides accountability measures (season closures) designed to keep landings at or below the limit.  As Plaintiffs have observed, however, there is no corresponding limit nor accountability measures for dead discards.  *See* Opening Brief at 21 (first paragraph of summary of argument); *id.* at 24–33 (first main section of argument).

That simple observation constitutes the factual core of the case.  The rest is legal argument:  Plaintiffs believe Defendants' failure to limit dead discards means they have failed to establish an annual catch limit as required by 16 U.S.C

---

[2] If for whatever reason the Court did hold this case to be moot, Plaintiffs respectfully would request vacatur of the District Court opinion under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950).  *See, e.g.*, *Planned Parenthood of Wisconsin, Inc. v. Azar*, 942 F.3d 512, 519 (D.C. Cir. 2019).

§ 1853(a)(15). *See* Opening Brief at 34–44. Defendants disagree. *See*

Defendants' Brief at 37–43.

So unless Amendment 59 provided an actual limit for dead discards, nothing

meaningful has changed with respect to this litigation. And no such thing

occurred. All Amendment 59 did, relative to the annual catch limit mechanism,

was adjust the respective numerical values. The Amendment 59 final rule

reprinted the regulatory text at 50 C.F.R. § 622.193(y), *see* 90 Fed. Reg. at 24,539,

but side-by-side comparison with previous versions shows the text remains

identical to that established in Amendment 43, save for the numerical values. *See*

Opening Brief at A-11 to A-15 (comparison chart).

Thus the case simply is not moot: the governing annual catch limit

mechanism for South Atlantic red snapper remains the one established by

Amendment 43. *Cf. Bryson*, 940 F. Supp. 2d at 1044 (noting in timeliness context

"Plan amendments which . . . retain a status quo do not equate to promulgation of a

new status quo" (cleaned up)).

### B.    Preamble Text in Amendment 59 Changes Nothing

Defendants nonetheless argue that "Amendment 59 largely does what

Plaintiffs want the Fisheries Service to do because it sets an annual catch limit that

includes dead discards." Defendants' Brief at 19; *see also id.* at 22 ("Amendment

59 specifically sets an annual catch limit that includes dead discards.").

These statements presumably rely on preamble text in the Amendment 59 final rule, where the agency stated it was setting a "total ACL" (total annual catch limit) that encompasses both landings and dead discards.  90 Fed. Reg. at 24,529 ("Amendment 59 increases the total ACL to 509,000 fish, separated into 34,000 fish as landings and 475,000 fish as dead discards."); *see also id.* (noting "[t]he revised total ACL is set equal to the revised [acceptable biological catch or ABC] value of 509,000 fish").

The first thing to note here is that Defendants' "total ACL" is solely a creature of preamble text, with no regulatory counterpart.  And preamble text is nonregulatory.  *E.g.*, *AT&T Corp. v. FCC*, 970 F.3d 344, 350 (D.C. Cir. 2020) (per curiam) ("[T]he real dividing point between the portions of a final rule with and without legal force is designation for publication in the Code of Federal Regulations." (cleaned up)); *Natural Res. Def. Council v. EPA*, 559 F.3d 561, 565 (D.C. Cir. 2009) ("Agency statements 'having general applicability and legal effect' are to be published in the Code of Federal Regulations."  (quoting Federal Register Act, 44 U.S.C. § 1510(a) (further citations omitted)).  Defendants are free to say whatever they like in their Federal Register preambles—but by the same token, such statements have no binding effect.

Even if Federal Register preambles did carry more weight, however, it is clear from Amendment 59 that the "total ACL" number does not function in any

way as a constraint on actual dead discards in the fishery.  This is because there are no accountability measures calibrated to the "total ACL"—meaning no regulatory measures exist that would constrain total catch to that number.  The only numbers with accountability measures remain the sector-based limits on landings.  *See generally* 90 Fed. Reg. at 24,527–39.

The Service was very explicit in Amendment 59 that the landings remain the only constraint on the fishery, and that the "total ACL" (which includes dead discards) does not function as a constraint:

> [T]he sector ACLs only represent landed catch and in-season monitoring of the sectors is based on landed catch only.  The sector accountability measures (AMs) are directly related to the sector ACLs which represent landed catch.  Any in-season closure or season length projection is based on landings only with respect to a sector ACL *and not the dead discard estimates that are included as part of the definition of the total ACL and ABC*.

90 Fed. Reg. at 24,529–30 (emphasis added); *see also id.* at 24,535 ("Amendment 59 specifies an ACL in total catch (landings and discards), but as with other Snapper Grouper [fishery management plan] species, this final rule specifies *only the sector's landed ACL for management purposes and in the regulatory text of this final rule*."  (emphasis added)).

What Defendants have done here is just highlight, in preamble text, a value from their upstream calculations—which they call a "total ACL."  They admit the value has no regulatory significance.  Instead, their stated purpose for discussing

16

the "total ACL" number apparently was that it "allows NMFS and stakeholders an opportunity to better understand the tradeoffs between reducing dead discards and increases in the ACL." *Id.*

This is all well and good, but it affects nothing in terms of the instant litigation. *See generally* Opening Brief at 28–33 (explaining why none of the upstream values function as actual limits on catch).

## C.    Defendants Did Not Affirmatively Readopt the Challenged Decision in Amendment 59

Mootness would be a closer call if Defendants had considered setting a limit on dead discards in Amendment 59, but then declined to do so—effectively readopting the decision made originally in Amendment 43.  Mootness and timeliness doctrine overlap somewhat in this regard.  *See supra* pages 3–4 (discussing traditional reopener doctrine); *compare Bryson*, 940 F. Supp. 2d at 1048 (applying reopener doctrine when agency substantively reconsidered the policy decision in later, challenged, action), *with Gulf of Maine Fisherman's Alliance v. Daley*, 292 F.3d 84, 88 (1st Cir. 2002) (finding mootness when "the record is clear that the [challenged regulation] . . . was expressly reconsidered and re-adopted in later [regulations]").

No such reconsideration happened here.  Starting at the proposed rule stage, Amendment 59 made clear that the operative limits on the fishery would continue to be the sector-based landings limits.  *See* 90 Fed. Reg. 3160, 3162 (Jan. 14, 2025)

17

("Management measures . . . are *intended to constrain catches to at or below the sector ACLs*."  (emphasis added)).  Defendants nowhere suggested they were considering actually constraining total catch (i.e., landings and dead discards combined), nor did the agency solicit comment on that topic.  *See id.* at 3160–70.

And in the final rule, it was clear no substantive consideration of the idea had taken place.  *See* 90 Fed. Reg. 24,527–39.  In fact, the only mention of limiting total catch was when the Service reprinted a comment from Plaintiffs.  *See id.* at 24,535 (Comment 17).  The agency brushed the comment off with a nonresponsive answer.  *See id.* (Response to Comment 17).

There is just no evidence that Defendants in Amendment 59 considered limiting total catch in the fishery and affirmatively rejected the idea, as would have been necessary to readopt the challenged decision from Amendment 43.  *See, e.g.*, *Gulf of Maine Fishermen's Alliance*, 292 F.3d at 88 (finding mootness where agency later "*expressly* reconsidered and re-adopted" a decision (emphasis added)); *cf. Bryson*, 940 F. Supp. 2d at 1044–46 (reviewing D.C. Circuit doctrinal reopener cases and noting, "The doctrine only applies, however, where the entire context demonstrates that the agency has undertaken a *serious, substantive reconsideration* of the existing rule"  (cleaned up, emphasis in original)).

18

### D.    Republication of 50 C.F.R. § 622.193(y) Does Not Moot This Challenge in Any Event

For the reasons above, the best analysis here is that Amendment 43 remains in effect, and the case is not moot.

Defendants would prefer a highly formalistic analysis, in which Amendment 59's republication of 50 C.F.R. § 622.193(y) served to repeal the previous contents of that subsection and create brand new regulatory text.  *See* Defendants' Brief at 18 ("When the Fisheries Service promulgated Amendment 59, it ceased relying on or applying Amendment 43 in any capacity, depriving it of any future effect.").

That view is not convincing, given the unchanged regulatory text and the Service's failure to reconsider the annual catch limit mechanism in Amendment 59. But *even if this Court were to adopt Defendants' formalistic approach, the case still would not be moot* and the Court would be able to rule on the current regulatory text at 50 C.F.R. § 622.193(y).

The Supreme Court has established, as an extension of the voluntary cessation exception to mootness, that when a challenged law is removed and replaced during the course of litigation, so long as the "gravamen of [a plaintiff's] complaint" continues to apply against the new law, a challenge is not rendered moot merely because the "new [law] differs in certain respects from the old one." *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (so holding in situation where new law was restructured and

19

modified in nontrivial ways—far beyond the numerical changes Defendants made to 50 C.F.R. § 622.193(y) in the instant litigation).

This Court has applied the concept as well.  *See, e.g.*, *Am. Freedom Def. Initiative v. WMATA*, 901 F.3d 356, 362 (D.C. Cir. 2018) (holding case not moot when replacement policy was "fundamentally similar" to previous version).  As the Court explained, were this not the rule, " 'a defendant could moot a case by repealing the challenged [law] and replacing it with one that differs only in some insignificant respect.'"  *Id.* (quoting *City of Jacksonville*, 508 U.S. at 662).

Thus even if this Court were to view the regulatory text at 50 C.F.R. § 622.193(y) as only being traceable back to Amendment 59, Plaintiffs' challenge still would not be moot.  *City of Jacksonville*, 508 U.S. at 662; *Am. Freedom Def. Initiative*, 901 F.3d at 362–63.


## III.    Defendants Lack a Viable Interpretation of 16 U.S.C. § 1853(a)(15)

Defendants' interpretation of section 1853(a)(15) appears to be as follows: so long as the Service reasonably believes overfishing will not occur, any annual catch limit mechanism will comply with the law.  *See* Defendants' Brief at 38 ("[T]he only textual constraint on the Fisheries Service's ability to set an annual catch limit is that the agency must set it at a level such that overfishing does not occur."); *id.* at 38–41 (defending reasonableness of agency's belief that the

Amendment 43 catch limit would not result in overfishing); *id.* at 42 (reframing lawsuit as "an argument challenging the adequacy of the agency's explanation" that Amendment 43 would prevent overfishing); *id.* at 42–43 (defining statutory term "catch" to mean whatever the Service believes is appropriate in a given situation).

This is nonsense.

When Congress required a "limit[]" on the "catch" in all federal fisheries, it was mandating use of a specific, well-understood tool. *See* Opening Brief at 34–38. It was not a situation where Congress legislated a placeholder concept that could be filled with whatever the Service wanted.

Congress said what it meant and meant what it said, when it required a "limit[]" on the "catch" in all fisheries. *See* Opening Brief at 38–40. These words were used with their ordinary meanings; the terms "annual catch limit" (ACL) and "total allowable catch" (TAC) were and (continue to be) used widely within fisheries management, and they mean exactly what they sound like they mean.

And, consistent with the function of annual catch limits as budgeting systems, Congress set up the new requirement such that the annual catch limit mechanism must *do the work* of preventing overfishing. *See* Opening Brief at 40–41. This is the exact opposite of Defendants' it's-fine-as-long-as-the-results-come-out-okay interpretation.

Defendants' interpretation thus conflicts with all the available interpretive evidence—the text, structure, and history of 16 U.S.C. § 1853(a)(15).  Opening Brief at 34–41.

It also fails on its own terms, because it leads to the conclusion that nothing changed after the 2006 amendments.  Defendants argue section 1853(a)(15) is satisfied so long as the Service reasonably believes overfishing will not occur.  Defendants' Brief at 37–43.  But the requirement to avoid overfishing has existed since the Magnuson-Stevens Act was enacted in 1976.  *See* Pub. L. No. 94–265 § 301(a)(1), 90 Stat. at 346, *codified at* 16 U.S.C. § 1851(a)(1).  The Service *always* has been required to believe—and explain why it believes—that its management actions will prevent overfishing.  *See, e.g.*, *Natural Res. Def. Council, Inc. v. Daley*, 209 F.3d 747 (D.C. Cir. 2000) (reviewing the Service's explanation of why it believed action would prevent overfishing, and remanding for insufficient likelihood of success).  If this is all that were necessary to satisfy 16 U.S.C. § 1853(a)(15), then the centerpiece of the Magnuson-Stevens Fishery Conservation and Management Reauthorization Act of 2006 would end up being nothing more than a restatement of existing law—an outcome fatal to Defendants' interpretation.  *See Owens*, 897 F.3d at 278 (courts may not pretend that amendments "ha[ve] not taken place").

22

IV.    **Defendants Offer No Substantive Defense of *A.P. Bell***

Given a full critique of *A.P. Bell* in Plaintiffs' Opening Brief, Defendants provide no real defense of that court's reasoning. *See* Defendants' Brief at 32–37 (repeating versions of "nothing in the text of § 1853(a)(15) requires the Fisheries Service to set annual catch limits or overfishing limits that directly include or limit bycatch"). This is telling.

As Plaintiffs explained, the central flaw in the *A.P. Bell* court's reasoning is similar to the flaw in Defendants' interpretation: it empties out the annual accountability that Congress intended the annual catch limit mechanism to create, reverting the system to the status quo pre-2006, where accountability is only provided by periodic overfishing determinations upon completion of new stock assessments. *See* Opening Brief at 50–51.

Specifically, the *A.P. Bell* court blessed as consistent with section 1853(a)(15) an approach wherein the Service assumed a certain amount of dead discards would occur in a year (the numerical value of the assumption being determined through stock assessment or catch projections), and then excluded dead discards from the annual catch limit mechanism—meaning no limit or accountability measures were provided for dead discards.

In any situation where dead discards represent a non-trivial amount of total catch, this approach hamstrings the annual catch limit mechanism. Like a

23

household budget that only includes cash expenditures, if there is any appreciable amount of credit card expenditures, then the cash-only budget will be ineffective at constraining overall spending to safe levels. This is illustrated spectacularly by South Atlantic red snapper, which has been subject to chronic overfishing due to uncontrolled dead discards. *See* J.A._____ (AR012117).

Instead, under the *A.P. Bell* approach, whether or not overfishing occurs for a stock turns on whether the agency's assumed number for dead discards was right. There is no accountability for a wrong assumption: the worst that can happen is several years pass, a new stock assessment is completed, and the Service realizes in hindsight that overfishing has taken place. The agency then makes a new assumption about dead discards going forward, which it (once again) hopes will be right, and the cycle continues. This was exactly the status quo that Congress rejected in 2006. *See* Opening Brief at 50–51; *Owens*, 897 F.3d at 278; *Ross*, 578 U.S. at 641 ("The Court of Appeals . . . acted as though the amendment . . . had not taken place.").

## IV.    This Court Can and Should Address the Problem

With little real debate on the merits, this case essentially comes down to what the Court does with *A.P. Bell*. All of the routes Plaintiffs offered in their Opening Brief for distinguishing or overruling the case remain viable.

*Distinguish the Facts*:  Defendants characterize *A.P. Bell* as providing a holding "as a legal matter" (presumably rather than as a factual matter), and therefore being indistinguishable.  *See* Defendants' Brief at 34–35.  This is misleading.  All holdings are "legal" and, also, all holdings are premised on the facts before the court.  *See, e.g.*, *United States v. Weaver*, 808 F.3d 26, 36 (D.C. Cir. 2015) (holding only understandable in reference to its context).  It could be that in *A.P. Bell*, dead discards represented a negligibly small proportion of total catch—in which case an annual catch limit governing only landings would indeed represent an effective "limit[]" on the total "catch" of red grouper.  We simply do not know, given the *A.P. Bell* opinion, so this Court could distinguish the facts and reach a different outcome.

*Distinguish the Law*:  Defendants believe there is no difference between a challenge to an overfishing limit (as in *A.P. Bell*) and a challenge to an annual catch limit (as here).  *See* Defendants' Brief at 35–36.  To the contrary, overfishing limits and all of the Service's other upstream values are merely regulatory creations.  *See* 50 C.F.R. § 600.310.  None of them are required by the statute; they exist just to provide detail and rigor for the agency's eventual setting of the annual catch limit.  While perhaps not likely, it certainly is conceivable that an upstream value could be set in landings-only terms, without predetermining the question of how the eventual annual catch limit would be set.  As such, *A.P. Bell's* posture as a

challenge to an overfishing limit is a viable point of differentiation.  Plaintiffs

acknowledge the *A.P. Bell* court did make broader statements about annual catch

limits and16 U.S.C. § 1853(a)(15), but given the posture, those broader statements

arguably are dicta.  *See In re Executive Office of the President*, 215 F.3d 20, 24

(D.C. Cir. 2000) (noting when a court provides observations "superfluous" to

deciding the issue at hand, those comments "are not binding on a subsequent

court" (cleaned up)).

 *No Applicable Principle*:  Despite Defendants' protestations, *see* Defendants

Brief at 36, it would be entirely appropriate for this Court to characterize *A.P.

Bell*'s discussion of 16 U.S.C. § 1853(a)(15) as not sufficiently reasoned to

constitute a holding.  *See, e.g.*, *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83,

91 (1998) ("We have often said that drive-by jurisdictional rulings of this sort . . .

have no precedential effect."); *Climate United Fund v. Citibank, N.A.*, slip op. at 19

(D.C. Cir. Sept. 2, 2025) (noting prior panel decision "made no mention of"

relevant statutory or case law, and concluding the "holding does not bind us");

*Lewis v. Becerra*, 111 F.4th 65, 75 (D.C. Cir. 2024) (applying same approach to a

Supreme Court decision); *United States v. Jones*, 846 F.3d 366, 369 (D.C. Cir.

2017), (noting when "[o]ur prior decisions . . . merely stated without analysis" a

legal conclusion, "those cursory and unexamined statements . . . have no

precedential effect" (cleaned up)); *De Csepel v. Republic of Hungary*, 859 F.3d

1094, 1105 (D.C. Cir. 2017) (reviewing prior panel's resolution of statutory interpretation issue and concluding it did not constitute a holding); *see also Agudas Chasidei Chabad v. Russian Fed'n*, 110 F.4th 242, 251–52, 254 (D.C. Cir. 2024) (reiterating conclusion from *De Csepel*).  Given the minimal rationale provided in *A.P. Bell*, *see* Opening Brief at 54–55, this Court would be more than warranted in viewing it as not binding.

    *Irons Footnote*:  Defendants quote dicta to suggest *Irons* footnotes can only be used for "minor or marginal issue[s]."  Def. Br. at 37 (quoting *Nat'l Assoc. for Surface Finishing v. EPA*, 795 F.3d 1, 8 n.4 (D.C. Cir. 2015)).  In fact, the situations where the Court uses *Irons* footnotes are well established:

> Over the years, this court has invoked widely varying justifications for using the procedure, including to resolve conflicts in circuit law, to expand or limit earlier decisions, to reject dicta or simply to overrule a decision deemed incorrect or outdated.  To impose some order on *Irons* footnote use, the court promulgated a policy statement in 1996 setting out specific circumstances for which the court reaffirmed the propriety of the footnote's use . . . .

*In re Sealed Case*, 181 F.3d 128, 145–46 (D.C. Cir. 1999) (en banc) (Henderson, J., concurring) (cleaned up).  Under that policy, an *Irons* footnote can be used when a "prior statement of law which, although arguably dictum, warrants express rejection to avoid future confusion."  U.S. Court of Appeals for the D.C. Circuit, Policy Statement on *En Banc* Endorsement of Panel Decisions (Jan. 17, 1996), at 1.  This precisely describes the situation at hand.  *See* Opening Brief at 55.

*En Banc Review*:  Although cumbersome and difficult, Plaintiffs do believe *en banc* review could be used as a last resort.  The *A.P. Bell* decision undermines the centerpiece of Congress's 2006 amendments, presenting a "question[] of exceptional importance," Fed. R. App. P. 40(b)(2)(D), for federal fisheries management, for all the members of Congress and their staffers who labored to enact the annual catch limit mandate nearly twenty years ago, and arguably for separation of powers—as it represents a dramatic post-hoc revision of legislation that was tightly negotiated and clearly understood by Congress at the time.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's grant of summary judgment to the Service; declare the annual catch limit mechanism at 50 C.F.R. § 622.193(y) violates the Act; vacate that regulatory text; and order the Service to establish a legally-compliant mechanism, with measures to ensure accountability, by a date certain.

Dated:  October 31, 2025                Respectfully submitted,

                                        /s/ Seth Atkinson
                                        Seth L. Atkinson
                                        CADC Bar No. 65869
                                        Quillback Consulting
                                        348 Nobel Drive
                                        Santa Cruz, CA 95060
                                        (203) 331-2792
                                        seth@quillbackconsulting.com

                                        *Attorney for Appellants*

## CERTIFICATE OF COMPLIANCE

In accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, undersigned counsel certifies that the attached Opening Brief of Appellants complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), as it was prepared in a proportionally spaced typeface using Microsoft Word for Mac v.16.101.3, with 14-point Times New Roman font and double spacing.

Undersigned counsel further certifies that the document complies with the word limit in Fed. R. App. P. 32(a)(7)(B), as it contains 6485 words, excluding the items specified in Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1).  Microsoft Word was used to conduct the word count.

Dated:  October 31, 2025                 Respectfully submitted,

                                         /s/ Seth Atkinson
                                         Seth L. Atkinson
                                         CADC Bar No. 65869
                                         Quillback Consulting
                                         348 Nobel Drive
                                         Santa Cruz, CA 95060
                                         (203) 331-2792
                                         seth@quillbackconsulting.com

                                         *Attorney for Appellants*